UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:23-cv-367

| | |
|---|---|
| ANDREW S. BEERS, individually and on behalf of all others similarly situated, ) ) ) Plaintiff(s), ) ) v. ) ) TERRY S. JOHNSON, in his official ) capacity as SHERIFF OF ALAMANCE ) COUNTY, NORTH CAROLINA, ) ) Defendant. ) ) | CLASS and COLLECTIVE ACTION COMPLAINT |

Plaintiff, Andrew S. Beers ("Beers" or "Plaintiff"), by and through counsel, on behalf of himself and all others similarly situated, brings a collective action against Defendant Terry S. Johnson, in his official capacity, as Sheriff of Alamance County, North Carolina ("Sheriff" or "Defendant") for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Beers, on behalf of himself and all others similarly situated, also brings a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure against Defendant for breach of contract under North Carolina law.

## NATURE OF PLAINTIFF'S CLAIMS

1. Beers brings his FLSA claims pursuant to 29 U.S.C. § 216(b) and he seeks to recover overtime compensation and statutory penalties for himself, and all similarly situated employees ("Collective Members").

2. Beers brings his breach of contract claim pursuant to the class action provision of Federal Rule of Civil Procedure 23 and he seeks to recover unpaid wages and

unpaid benefits (vacation pay, holiday pay, sick pay, and "Birthday" pay) for himself and any similarly situated employees ("Class Members") to remedy Defendant's practice and policy of willfully failing and refusing to pay Plaintiff and the Class Members all their earned and accrued wages and benefits.

## THE PARTIES

3. Beers is an adult individual who is a resident of Alamance County, North Carolina. Beers is employed by Defendant as a Detention Officer within the meaning of the FLSA. Beers' Consent to Become a Party Plaintiff form is attached hereto as Exhibit 1.

4. The Sheriff is a duly elected public official and employer who operates the Alamance County Sheriff's Office in Alamance County, North Carolina.

## JURISDICTION AND VENUE

5. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201 *et seq*.

6. This Court has personal jurisdiction because Defendant employs Beers within this judicial district, Defendant is alleged to have committed the unlawful acts within this judicial district, and the payroll records at issue in this lawsuit are maintained in this judicial district.

7. Venue is proper in this judicial district because the unlawful acts alleged herein occurred in Alamance County, North Carolina.

8. The claims for breach of contract are based on the law of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent

state claims because they arise out of the same nucleus of operative facts as the FLSA claim.

9. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness and convenience for the parties.

## COVERAGE ALLEGATIONS

10. At all times hereinafter mentioned, Defendant has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

11. At all times hereinafter mentioned, Defendant has been an enterprise within the meaning of Section 3(r) of the FLSA 29 U.S.C. § 203(r).

12. At all times hereinafter mentioned, Plaintiff has been an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

## PLAINTIFF'S FACTUAL ALLEGATIONS

13. Beers has been employed as a "12 Hour Employee" detention officer at the Alamance County Detention Center ("Detention Officer") since October 14, 2019. Defendant employs approximately 67 Detention Officers, including Plaintiff.

14. Detention Officers perform a variety of law enforcement duties in the care, custody, and security of prisoners, including but not limited to maintaining the safety and security of all personnel, inmates, and the jail.

15. Defendant pays Detention Officers on a monthly basis.

16. Defendant lists an annual "salary" for the Detention Officer position but categorizes the "Job Status" for Detention Officers as "Hourly." (See Exhibit 2, Alamance County Job Posting for Detention Officer Position.)

17. Pursuant to the "Alamance County Sheriff's Office 12 Hour Employee Schedule – Permanent," Defendant schedules Detention Officers to work a rotating schedule that consists of two days on, followed by two days off, followed by three days on, followed by two days off, followed by two days on, followed by three days off ("Rotating Schedule"). Each scheduled shift is 12.25 hours.

18. Under the Rotating Schedule, Detention Officers are scheduled to work between 14-17 shifts per month. Depending upon the number of scheduled 12.25-hour shifts that fall within each rotation, Plaintiff and other similarly situated Detention Officers are scheduled to work between 171.5 hours and 208.25 hours per month.

19. Detention Officers also work additional time if they are scheduled for training or required to arrive early or continue working beyond the end of their Rotating Schedule shifts.

20. Regardless of the actual number of hours Detention Officers work under the Rotating Schedule, Defendant only pays Detention Officers 173.33 hours per month for these hours. (See Exhibit 3, Sampling of Andrew Beers' "Check Details" from 2021, 2022 and 2023).

21. Defendant also includes training time, as well as work performed before and after Rotating Schedule shifts, in the 173.33 hours paid to Detention Officers each month.

22. By way of example, for the pay period January 1, 2023 through January 31, 2023, Plaintiff was scheduled for sixteen 12.25-hour shifts, which totaled 196 Rotating

Schedule work hours. During this pay period, Plaintiff worked 197.75[1] Rotating Schedule work hours, which included additional time worked on January 12, 17, 20, 21, 22, 25, 26, 30 and 31. Plaintiff also worked 2 additional hours attending training on January 25. Defendant only paid Plaintiff for 173.33 hours ($4,401.40 / $25.3932/hr. = 173.33). Defendant failed to pay Plaintiff 24.42 hours of earned Rotating Schedule wages. (See Exhibit 4, Andrew Beers Timecard for Pay Period 1/01/2023 – 1/31/2023, Exhibit 5, Andrew Beers Pay Stub for Pay Period 1/01/2023 – 1/31/2023, and Exhibit 6, Andrew Beers Check Detail for Pay Period 1/01/2023 – 1/31/2023).

23. Detention Officers are entitled to paid holidays as designated by the Alamance County Board of Commissioners. For each paid holiday, Defendant credits the Detention Officer with twelve hours of paid time off, which is denoted in Defendant's timekeeping records as "Holiday Banked." When Detention Officers utilize accrued "Holiday Banked" time to cover absences from their Rotating Schedule work hours, Defendant denotes this time as "Holiday."

24. Detention Officers earn paid vacation days pursuant to the formula utilized for Alamance County Employees as set forth in the Alamance County Employee Handbook. When Detention Officers utilize accrued paid vacation time to cover absences from their Rotating Schedule work hours, Defendant denotes this time as "Vacation Leave."

25. Detention Officers earn paid sick time pursuant to the formula utilized for

---

[1] For ease of calculating allegations of unpaid time, all minute time entries have been converted to a decimal format. For example, Plaintiff's assertion in Paragraph 22 that Plaintiff worked "197.75 Rotating Schedule work hours" is equivalent to 197 hours and 45 minutes, i.e., .75 hours equals 45 minutes (45 minutes / 60 minutes = .75 hours).

Alamance County Employees as set forth in the Alamance County Employee Handbook. When Detention Officers utilize accrued paid sick time to cover absences from their Rotating Schedule work hours, Defendant denotes this time as "Sick Leave."

26. Detention Officers earn two hours of paid "Birthday" pay per year. When Detention Officers utilize accrued paid Birthday pay to cover absences from their Rotating Schedule work hours, Defendant denotes this time as "Birthday."

27. When Detention Officers are absent from a scheduled shift, they utilize accrued benefits in the following order: (1) accrued Birthday pay ("Birthday"), (2) accrued compensatory time off ("Comp Time Taken Hourly"[2]), (3) accrued banked holidays ("Holiday"), and (4) accrued vacation ("Vacation Leave"). Accrued sick time ("Sick Leave") is utilized when a Detention Officer calls off for a scheduled shift, but Detention Officers have the option to utilize other accrued paid time off, in the order listed above, rather than utilizing their accrued sick time.

28. During months Plaintiff and the Detention Officers utilize Vacation Leave, Holiday pay, Sick Leave and/or Birthday pay to cover absences for Rotating Schedule work hours exceeding 173.33 per month, Defendant fails to pay Detention Officers all earned and accrued benefits.

29. By way of example, for the pay period September 1, 2022 through September 30, 2022 the Rotating Schedule resulted in Plaintiff being scheduled for fifteen 12.25-hour shifts, which totaled 183.75 Rotating Schedule work hours. During this pay period,

---

[2] "Comp Time Taken Hourly is addressed below in paragraphs 33-41.

6

Case 1:23-cv-00367-TDS-JLW    Document 1    Filed 05/05/23    Page 6 of 18

Plaintiff worked 97 Rotating Schedule work hours and 8 hours of Detention Overtime ("Detention OT").³  Plaintiff also utilized 9.37 hours of paid Comp Time Taken Hourly, 2 hours of paid Birthday pay, 36.63 hours of paid Holiday time, and 36 hours of paid Sick Leave.  Plaintiff should have been paid for a combined total of 181 hours, not including 8 Detention OT hours, representing Rotating Schedule work hours, accrued compensatory time paid, and accrued paid benefits.  Instead, Defendant only paid Plaintiff for 173.33 hours at his base hourly rate ($3,738.38 / $21.568/hr = 173.33). Defendant failed to pay 7.67 hours of accrued benefits during this pay period.  (See Exhibit 7, Andrew Beers Timecard for Pay Period 9/01/2022 – 9/30/2022, Exhibit 8, Andrew Beers Pay Stub for Pay Period 9/01/2022 – 9/30/2022, and Exhibit 9, Andrew Beers Check Detail for Pay Period 9/01/2022 – 9/30/2022).

30.   In or about January 2022, Defendant implemented a pay increase for Detention Officers in the form of a $333.33 monthly "shift differential."  All Detention Officers are paid the monthly $333.33 "shift differential." Defendant's payroll records denote the $333.33 payment as "Shift Diff" or "SD."  (See Exhibit 10, Andrew Beers Pay Stub for Pay Period 1/01/2022 – 1/31/2022, and Exhibit 11, Andrew Beers Check Detail for Pay Period 1/01/2022 – 1/31/2022).

31.   Under North Carolina law, the employment relationship between Defendant and Detention Officers is one of contract.  Detention Officers have contractual rights to be paid all earned wages for hours worked, as well as full payment for accrued paid Holidays,

---

³ Detention OT is addressed below in paragraphs 42-44.

paid Sick Leave, paid Birthday pay, and paid Vacation Leave. Detention Officers' contractual rights to be compensated for their earned wages and accrued benefits are specified in Defendant's policies and procedures. Defendant lists Detention Officers' contractual benefits in the Alamance County Job Posting for the Detention Officer position. (See Exhibit 2).

32. In sum, Defendant does not have any written policy or other document that specifies whether Detention Officers are paid a "salary," or on an "hourly basis. To the extent Defendant contends it pays Detention Officers a monthly "salary," Defendant's payroll and time records demonstrate that the "salary" only covers 173.33 hours per month, which is calculated by multiplying 173.33 hours times the Detention Officers' base hourly pay rate. The base hourly pay rate for Detention Officers is shown on their pay stubs and Check Detail for each paycheck issued by Defendant. Defendant does not compensate Detention Officers for additional Rotating Schedule time worked in excess of 173.33 hours per month, nor does it compensate Detention Officers for accrued benefits (Vacation Leave, Holiday pay, Sick Leave, and Birthday pay) utilized to cover absences for scheduled Rotating Schedule work hours exceeding 173.33 per month. Defendant's failure to pay Detention Officers for all Rotating Schedule hours worked and/or their accrued benefits used to cover absences from their Rotating Schedule work hours constitutes a breach of contract under North Carolina law.

33. Detention Officers earn compensatory time pursuant to Section 7(k) of the FLSA, which allows compensatory time (in lieu of paid overtime) to accrue for all hours worked over 86 hours during a 14-day period. Detention Officers accrue compensatory

time for all Rotating Schedule hours worked over 86 hours in a 14-day period.

34. Detention Officers are classified as "non-exempt" under the FLSA. (See Exhibit 2, Alamance County Job Posting for Detention Officer position).

35. Plaintiff and the Detention Officers routinely work and have worked more than 86 hours during certain 14-day FLSA 7(k) periods within the three-year period preceding the filing of this lawsuit. Defendant's payroll records denote accrued compensatory time as "Comp Time Earned 1.5."

36. By way of example, Plaintiff accrued 4.5 hours of compensatory time during the payroll period 8/01/2022 and 8/31/2022. (See Exhibit 12, "Andrew Beers Timecard for the pay period 8/1/2022 – 8/31/2022.")

37. Detention Officers utilize accrued compensatory time to cover absences from their Rotating Schedule work hours, which Defendant pays at the Detention Officer's base hourly rate of pay. Defendant's payroll records denote when accrued compensatory time is utilized by Detention Officers as "Comp Time Taken Hourly."

38. During months Detention Officers utilize Comp Time Taken Hourly to cover absences for their Rotating Schedule work hours exceeding 173.33 per month, Defendant fails to pay Detention Officers all accrued compensatory time off in violation of the FLSA.

39. By way of example, for the pay period August 1, 2021 through August 31, 2021, Plaintiff was scheduled for sixteen 12.25-hour shifts, which totaled 196 Rotating Schedule work hours. During this pay period, Plaintiff worked 156.5 Rotating Schedule work hours and he utilized 2 hours of Birthday pay, 32.75 hours of Comp Time Taken Hourly, and 7.25 hours of paid Holiday. Plaintiff should have been paid 198.5 hours, with

165.75 hours paid at Plaintiff's base hourly rate and 32.75 hours of accrued compensatory time paid at Plaintiff's regular rate of pay, as defined by the FLSA. Instead, Defendant only paid Plaintiff 173.33 hours at his base hourly rate. Defendant failed to pay Plaintiff the correct pay rate for 14.83 hours of Comp Time Taken Hourly and Defendant failed to pay Plaintiff any compensation for the remaining 17.92 hours of Comp Time Taken Hourly or for 7.25 hours of paid Holiday. (See Exhibit 13, Andrew Beers Timecard for Pay Period 8/01/2021 – 8/31/2021 and Exhibit 14, Andrew Beers Pay Stub for Pay Period 8/01/2021 – 8/31/2021.)

40. In addition, Defendant does not include the $333.33 monthly "shift differential" when calculating Detention Officers' regular rates of pay for the accrued compensatory time off for the Comp Time Taken Hourly that Defendant pays Detention Officers. Instead, Defendant pays Detention Officers at their base hourly rates of pay. Defendant's failure to include the "shift differential" in the regular rate calculation constitutes a separate violation of the overtime provisions of the FLSA.

41. By way of example, Plaintiff utilized 9.37 hours of accrued compensatory time to cover an absence on September 13, 2022, during the payroll period September 1, 2022 and September 30, 2022. (See Exhibit 7, "Andrew Beers Timecard for the pay period 9/1/2022 – 9/31/2022.") Defendant paid Plaintiff his base hourly rate of $21.57 for 173.33 hours, which included the 9.37 hours of accrued compensatory time that Plaintiff utilized on September 13, 2022. (See Exhibit 8, "Paystub for Pay Period 9/1/2022 – 9/30/2022.") Defendant failed to pay Plaintiff at the correct hourly rate of pay because it did not include the "Shift Differential" when calculating Plaintiff's regular rate of pay.

42. Detention Officers earn paid overtime for additional hours worked outside of the Rotating Schedule.  By way of example, Detention Officers are permitted to volunteer for additional work shifts and they are also subject to working mandatory additional shifts when they are on-call.  Defendant denotes this time as "Detention OT" or "OT 1.5." Detention OT is paid at one and one-half times a Detention Officer's base hourly rate of pay.

43. Defendant does not track, or record Detention OT hours based on the same schedule utilized for Rotating Schedule hours.  Instead, Detention OT hours are tracked from mid-month to mid-month.

44. By way of example, Plaintiff worked 12.25 hours of Detention OT on July 17, 2022 and 12.25 hours of Detention OT on August 14, 2022.  Defendant paid Plaintiff $792.62 for Detention OT (24.50 hours Detention OT x (21.568/hour x 1.5 = $32.352) = $792.62) in Plaintiff's 8/01/2022 – 8/31/2022 paycheck.  (See Exhibit 15, Andrew Beers Timecard for Pay Period 7/01/2022 – 7/31/2022, Exhibit 12, Andrew Beers Timecard for Pay Period 8/01/2022 – 8/31/2022, Exhibit 16, Andrew Beers Pay Stub for Pay Period 8/01/2022 – 8/31/2022, and Exhibit 17, Andrew Beers Check Detail for Pay Period 8/01/2022 – 8/31/2022).

45. Defendant does not include the $333.33 shift differential paid to Detention Officers when calculating the regular rate of pay for calculating Detention OT.

46. Defendant does not include Detention OT hours worked in its FLSA Section 7(k) calculation of hours worked in a 14-day period for purposes of determining when Detention Officers are eligible for compensatory time off by exceeding the 86-hour

threshold.

47. Beginning in 2019 and continuing through early 2023, Plaintiff made numerous complaints to Defendant's management representatives regarding the violations of law at issue in this lawsuit. To date, Defendant has refused to acknowledge its unlawful pay practices or to cease engaging in its unlawful activities.

## COLLECTIVE ACTION ALLEGATIONS

48. Plaintiff brings Count I of his Complaint pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 201 *et seq.*

49. Defendant currently employs approximately 67 Detention Officers. Due to turnover, Defendant has previously employed additional Detention Officers during the three-year period preceding the filing of this Complaint.

50. Beers is similarly situated to other non-exempt current and former full-time Detention Officers in that they share similar titles, job duties, and compensation schemes, including the uniform policy and practice of failing to pay all compensation owed for accrued Comp Time Taken Hourly and excluding the shift differential from the regular rate calculation when paying accrued Comp Time Taken Hourly.

51. Pursuant to policy and practice, Defendant has failed to pay Detention Officers all their earned overtime wages and Defendant has failed to pay overtime wages at the rate required by the FLSA.

52. Application of this policy and practice is not dependent on the personal circumstances of individual Detention Officers, but rather affected Plaintiff and all other current and former Collective Members in the same manner. Application of this policy or

practice does not depend on the personal circumstances of Plaintiff or those joining this lawsuit. Rather, the same policy or practice that resulted in the FLSA violations applied to Plaintiff and all Collective Members. Accordingly, the collective is properly defined as:

**All current and former Detention Officers who were employed during the period May 5, 2020 through present.**

53. Defendant willfully violated the provisions of the FLSA by failing to pay Detention Officers in compliance with the FLSA.

## CLASS ACTION ALLEGATIONS

54. Plaintiff brings Count II of his Complaint pursuant to Fed. R. Civ. P. 23 on behalf of himself and the following class:

**All current and former Detention Officers who were employed during the period May 5, 2021 through present.**

55. This breach of contract action is maintainable as a class action pursuant to Rule 23 for failure to pay Detention Officers all promised and earned wages and benefits for all hours worked and/or scheduled.

56. The proposed class is easily ascertainable. The number and identity of Class Members are determinable from Defendant' payroll records or records over which they have control.

57. The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of Class Members is unknown to Plaintiff at this time, upon information and belief, the class is comprised of more than 75 persons.

58. There is a well-defined commonality of interest in the questions of law and

fact involving and affecting the proposed class in that Plaintiff and all members of the proposed class have been harmed by Defendant's failure to pay all earned wages and benefits established by Defendant's employment policies. The common questions of law and fact include, but are not limited to the following:

(a) whether Defendant refused to timely pay Plaintiff and members of the proposed class their promised and earned wages for all Rotating Schedule hours worked in breach of their contract with Defendant;

(b) whether Defendant refused to timely pay Plaintiff and members of the proposed class their promised and earned benefits, including Vacation Leave, Birthday pay, Holiday pay, and Sick Leave, for all accrued hours in breach of their contract with Defendant; and

(c) Whether Defendant's refusal to pay such compensation and benefits is a breach of the contract between Defendant and Detention Officers.

59. The damages suffered by Plaintiff and the members of the proposed class arise from the same nucleus of operative facts.

60. The claims of Plaintiff are typical of those claims that could be alleged by any member of the proposed class and the relief sought is typical of the relief that would be sought by each member of the class in separate actions. All Class Members were subject to the same compensation practices of Defendant, i.e., refusing to timely pay promised and earned wages and benefits. The compensation policies and practices of Defendant affected all Class Members similarly, and Defendant benefitted from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and members of the proposed class

sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

61. Plaintiff can fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and members of the proposed class. Plaintiff has retained counsel who is experienced and competent in both wage and hour and multi-plaintiff litigation.

62. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the loss, injuries, and damages suffered by each of the individual Class Members are modest, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them.

63. Important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for adjudication of individual litigation and claims would be substantial and substantially more than if the claims are treated as a class action.

64. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for the

Defendant and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

## COUNT I
### (Violation of FLSA – Collective Action)

65. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

66. Count I arises from Defendant's violation of the FLSA, for its failure to accurately track the number overtime hours worked by Detention Officers under Section 7(k) and by failing to pay all overtime wages earned by Plaintiff and members of the proposed collective class.

67. Count I also arises from Defendant's violation of the FLSA, for its failure to pay all compensatory time and overtime wages at the correct overtime rate mandated by the FLSA. By excluding the shift differential paid to all Detention Officers from the FLSA regular rate calculation, Defendant violated the FLSA by failing to pay Plaintiff and members of the proposed collective class the correct overtime premium rate of pay as required by the FLSA.

68. Defendant's violation of the FLSA was willful.

## COUNT II
### (Breach of Contract – Class Action)

69. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

70. Count II arises from Defendant's policy and practice of failing to pay Detention Officers all promised and earned wages and benefits for all hours worked and/or scheduled during each Rotating Schedule.

71. Defendant breached its contract with Detention Officers by failing to pay Plaintiff and similarly situated employees all promised and earned wage and benefit payments.

72. Defendant's breach of contract caused harm to Detention Officers.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands the Court:

a) An Order pursuant to Section 16(b) of the FLSA finding Defendant liable for unpaid overtime wages due to Plaintiff (and those who have joined in the suit) and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those who have joined in the suit);

b) An Order certifying Plaintiff's breach of contract claim as a class action under Rule 23 of the Federal Rules of Civil Procedure and designating the above Plaintiff as a representative on behalf of all similarly situated Detention Officers;

c) An Order finding Defendant breached its contract with Detention Officers and finding Defendant liable for unpaid wages and benefits due to Plaintiff and the class;

d) An Order awarding the costs of this action;

e) An Order awarding reasonable attorneys' fees;

f) A Declaration and finding by the Court that Defendant willfully violated provisions of the FLSA by failing to comply with the overtime requirements of the FLSA;

g) An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

h) An Order granting such other and further relief as may be necessary and appropriate.

Dated: May 5, 2023.

Respectfully submitted,

s/ Philip J. Gibbons, Jr.
Philip J. Gibbons, Jr., NCSB #50276
Corey M. Stanton, NCSB #56255
Ethan L. Slabosky, NCSB #59555
**GIBBONS LAW GROUP, PLLC**
14045 Ballantyne Corporate Place, Suite 325
Charlotte, North Carolina 28277
Telephone: (704) 612-0038
E-Mail: phil@gibbonslg.com
corey@gibbonslg.com
ethan@gibbonslg.com

*Attorneys for Plaintiff*