IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANDREW S. BEERS and KATHERINE WHITE, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:23CV367 |
| TERRY S. JOHNSON, in his official capacity as SHERIFF OF ALAMANCE COUNTY, NORTH CAROLINA, | ) ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on Plaintiffs Andrew S. Beers ("Beers") and Katherine White's ("White") (collectively "Plaintiffs") Unopposed Motion for Collective and Class Certification. (Docket Entry 21.) Defendant Terry S. Johnson, in his official capacity as Sheriff of Alamance County, North Carolina, did not file a response. For the reasons stated herein, the undersigned recommends that Plaintiffs' motion be granted.

**I.  BACKGROUND**

As set out in the Amended Complaint, Plaintiffs, on behalf of themselves and all others similarly situated, bring a collective action against Defendant for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and also bring a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure against Defendant for breach of contract under North Carolina law. (*See generally* Am. Compl., Docket Entry 15.) More specifically, Beers, a

1

Detention Officer, and White, a Detention Corporal, are both employed as "12 Hour Employee[s]" at the Alamance County Detention Center where they perform various job duties related to the custody, care, and security of inmates and where Plaintiffs get paid monthly. (*Id.* ¶¶ 3-4, 14-17.) Whether a Detention Officer or Corporal, the "Alamance County Sheriff's Office 12 Hour Employee Schedule – Permanent" has officials on a "rotating schedule that consists of two days on, followed by two days off, followed by three days on, followed by two days off, followed by two days on, followed by three days off ([the] 'Rotating Schedule')." (*Id.* ¶ 20.) Each shift amounts to 12.25 hours, and Detention Officers and Corporals "are scheduled to work between 14-17 shifts per month" under the Rotating Schedule, which, depending on the rotations, equates to "between 171.5 hours and 208.25 hours per month." (*Id.* ¶¶ 20-21.) Sometimes Detention Officers and Corporals work additional time, including time scheduled for training, but Plaintiffs allege that "[r]egardless of the actual number of hours Detention Officers and Corporals work under the Rotating Schedule, Defendant only pays Detention Officers and Corporals 173.33 hours per month for these hours." (*Id.* ¶¶ 22-23; *see also* Ex. 3, Docket Entry 15-3.) For example, Beers worked a total of 197.75 Rotating Schedule work hours, and additional hours for training during a pay period, but was only paid for 173.33 hours. (Am. Compl. ¶ 25; *see also* Ex. 4, Docket Entry 15-4, Ex. 5, Docket Entry 15-5, Ex. 6, Docket Entry 15-6.) White also accrued hours above the 173.33 count in a pay period for which she was not compensated. (Am. Compl. ¶ 26.)

Plaintiffs also allege that Detention Officers and Corporals are entitled to paid holidays, earn paid vacation days and paid sick time according to a formula utilized for Alamance County Employees, earn compensatory time (Comp Time) pursuant to Section 7(k) of the

2

FLSA, and earn two hours of paid "Birthday" pay per year. (*Id.* ¶¶ 27-30, 38.) When absent from a scheduled shift, Detention Officers and Corporals utilize accrued benefits, including Comp Time, in a specific order. (*Id.* ¶ 31.) However, Plaintiffs allege that when Detention Officers and Corporals use "Vacation Leave, Holiday pay, Sick Leave and/or Birthday pay to cover absences for Rotating Schedule work hours exceeding 173.33 per month, Defendant fails to pay . . . all earned and accrued benefits." (*Id.* ¶ 32.) Both Beers and White experienced inadequate compensation as a result. (*See id.* ¶¶ 33-34.) In addition, when Detention Officers and Corporals use Comp Time to cover absences for their Rotating Schedule work hours that exceed the 173.33 per month, Plaintiffs allege that Defendant fails to pay all accrued compensatory time off in violation of the FLSA. (*Id.* ¶¶ 44-46.)

The Amended Complaint also asserts that Defendant implemented a pay increase for Detention Officers and Corporals in or about January 2022. (*Id.* ¶ 35.) As such, they "are paid [a] monthly $333.33 'shift differential' " and "Defendant's payroll records denote the $333.33 payment as 'Shift Diff' or 'SD.' " (*Id.*) However, Defendant does not include the shift differential when calculating the rates of pay for Comp Time; rather, Defendant pays the base hourly rates which Plaintiffs allege is a separate violation of the overtime provisions of the FLSA. (*Id.* ¶ 47.) Again, both Beers and White experienced inadequate compensation as a result. (*See id.* ¶¶ 48-49.) Plaintiffs further assert that Detention Officers and Corporals earn paid overtime for additional hours worked outside of the Rotating Schedule, which Defendant does not track, nor record such overtime hours based on the same schedule utilized for the Rotating Schedule hours, nor does Defendant include the $333.33 shift differential when calculating the regular rate of pay for determining the overtime pay. (*Id.* ¶¶ 50-53.) Moreover,

3

according to Plaintiffs, Defendant fails to include overtime "hours worked in its FLSA Section 7(k) calculation of hours worked in a 14-day period for purposes of determining when Detention Officers and Corporals are eligible for compensatory time off by exceeding the 86-hour threshold." (*Id.* ¶ 54.)

As a result, Count 1 of the Amended Complaint raises a violation of the FLSA against Defendant as a collective action. (*Id.* ¶¶ 74-77.) Plaintiffs bring Count II of the Amended Complaint pursuant to Rule 23 for breach of contract. (*Id.* ¶¶ 78-81.)

In support of their motion, Plaintiffs point to the allegations in the Amended Complaint, in addition to the admissions set forth in Defendant's Amended Answer, and sworn declarations of Beers, White, and Plaintiffs' counsel, Philip J. Gibbons, Jr. (*See* Declaration of Andrew S. Beers ("Beers Decl."), Docket Entry 23; Declaration of Katherine White ("White Decl."), Docket Entry 22-1); Declaration of Philip J. Gibbons, Jr. ("Gibbons, Jr. Decl."), Docket Entry 22-2; Am. Compl. ¶¶ 14-57; Def.'s Answer, Docket Entry 16.) The declarations of Beers and White reiterate the allegations in the Amended Complaint in that Defendant pays Detention Officers and Corporals[1] on a monthly basis, and all such officers

---

[1] In their declarations, White and Beers explain:

> The Detention Officer position consists of the following ranks: Detention Officer I, Detention Officer II, Detention Officer III, and Corporal. For purposes of [these] Declaration[s], the term "Detention Officer" refers to all Detention Officer ranks that work pursuant to the "Alamance County Sheriff's Office 12 Hour Employee Schedule – Permanent," which is a rotating schedule that consists of two days on, followed by two days off, followed by three days on, followed by two days off, followed by two days on, followed by three days off ([the] "Rotating Schedule").

(White Decl. ¶ 2; Beers Decl. ¶ 2.) Thus, reference to the Detention Officers in the declarations also incorporates Corporals.

4

are scheduled and work pursuant to the Rotating Schedule and are paid an hourly rate of pay, and are eligible for the same benefits, including Vacation Leave, Holiday pay, Sick Leave, and Birthday pay. (White Decl. ¶ 3; Beers Decl. ¶ 3; Am. Compl. ¶¶ 17, 27-30.) They further aver that under the Rotating Schedule, Detention Officers and Corporals are scheduled to work between 14-17 shifts per month, amounting to approximately 171.5 hours to 208.25 hours per month, which sometimes requires additional work time for training or early/late release. (White Decl. ¶ 3; Beers Decl. ¶ 3.) However, as stated above, regardless of the number of hours worked, Defendant only compensates for 173.33 hours per month for these hours. (White Decl. ¶ 6; Beers Decl. ¶ 6.) Beers has attached examples of his check details to his declaration. (*See* Ex. 4, Docket Entry 23-4; Ex. 10, Docket Entry 23-10; Ex. 14, Docket Entry 23-14.) Again, as one example, Beers shows that despite working 197.75 hours, he was only paid for 173.33 hours. (*See* Ex. 2, Docket Entry 23-2; Ex. 3, Docket Entry 23-3; Ex. 4, Docket Entry 23-4.) Beers and White state that "[a]ll other Detention Officers, regularly work more than 173.33 hours per month, but are not paid for these additional hours." (White Decl. ¶ 6; Beers Decl. ¶ 6.)

In addition, Beers and White also attest to the issues with accrued benefits, including paid holidays, paid vacation days, paid sick time, and birthday pay, and Defendant's failure to pay Detention Officers and Corporals all earned and accrued benefits for the additional hours over 173.33 during months when officers use the benefits to cover absences for the Rotating Schedule work hours exceeding 173.33. (White Decl. ¶¶ 7-11; Beers Decl. ¶¶ 7-11; *see also* Ex. 5, Docket Entry 23-5; Ex. 6, Docket Entry 23-6; Ex. 7, Docket Entry 23-7.) Beers provides another example of a time period where he "should have been paid for a combined total of

5

181 hours, not including the 8 [overtime hours], representing [the] Rotating Schedule work hours, accrued compensatory time paid, and accrued paid benefits[,]" however, he was only paid "for 173.33 hours at [his] base hourly rate."  (Beers Decl. ¶ 12; *see also* Ex. 8, Docket Entry 23-8; Ex. 9, Docket Entry 23-9; Ex. 10, Docket Entry 23-10.)

Moreover, Beers and White aver to: (1) the "non-exempt" classification of Detention Officers and Corporals under the FLSA; (2) Defendant's failure to compensate when officers use Comp Time to cover absences for their Rotating Schedule work hours that exceed the 173.33 per month; (3) Defendant's improper tracking and calculation of overtime hours; and (4) Defendant's failure to include the $333.33 shift differential when calculating the regular rate of pay for determining the overtime pay.  (White Decl. ¶¶ 12-16; Beers Decl. ¶¶ 13, 15, 17, 19-20.)  For example, Beers states that during one pay period, he "worked 156.5 Rotating Schedule work hours[,]" and "used 2 hours of Birthday pay, 32.75 hours of Comp Time Taken Hourly, and 7.25 hours of paid Holiday," thus, he "should have been paid for 198.5 hours." (Beers Decl. ¶ 16; *see also* Ex. 12, Docket Entry 23-12.)  However, he "was only paid for 173.33 hours" and "received no compensation for the 17.92 hours of Comp Time Taken Hourly or for 7.25 hours of paid Holiday because these hours exceeded 173.33."  (Beers Decl. ¶ 16; *see also* Ex. 13, Docket Entry 23-13; Ex. 14, Docket Entry 23-14.)  On two instances when Beers worked overtime in July and August of 2022, he states that he was paid overtime during the August 2022 pay period, but "Defendant did not include [the] overtime hours towards the FLSA Section 7(k) 86-hour threshold for earning compensatory time."  (Beers Decl. ¶ 18; *see*

6

*also* Ex. 15, Docket Entry 23-15.) Finally, Beers provides an example of the $333.33 shift differential inadequate calculation. (*See* Beers Decl. ¶ 20.)[2]

According to Defendant's Answer to the Amended Complaint, he admits that: (1) Detention Officers and Corporals are scheduled to work the Rotating Schedule (Def.'s Answer ¶ 20); (2) Defendant currently employs approximately 57 Detention Officers and 11 Corporals (*id.* ¶ 57); (3) Defendant pays Detention Officers and Corporals on a monthly basis (*id.* ¶ 17); and (4) Detention Officers and Corporals are subject to the same compensation and timekeeping policies and practices (*id.* ¶ 19).

Last, in support of their motion, Plaintiffs submit the declaration of their counsel, Attorney Gibbons, Jr., who states that he has been litigating labor and employment law cases since 1996, and "[i]n 2008, [he] began focusing [his] employment law practice primarily on wage and hour claims under federal and state law, including complex multi-plaintiff wage and hour litigation." (Gibbons, Jr. Decl. ¶ 3.) He has been lead counsel in several class and/or collective wage and hour lawsuits, has "litigated more than 100 additional wage and hour actions that did not involve conditional or class certification," and is "currently litigating, or have litigated, [several] class and/or collective action wage and hour lawsuits" in district courts within North Carolina. (*Id.* ¶¶ 5-6.) Attorney Gibbons, Jr. has been recognized as a plaintiff-side employment lawyer. (*Id.* ¶ 7.) In addition, he notes that he is being assisted by Attorney Corey M. Stanton, who is currently working with Attorney Gibbons, Jr., and "has participated

---

[2] The check detail for the pay period of August 1, 2022, through August 31, 2022 is attached to the Amended Complaint. (*See* Ex. 17, Docket Entry 15-17.)

in litigating more than 60 employment law cases in North and South Carolina Federal District Courts, including multiple class and collective actions." (*Id.* ¶ 8.)

## II. DISCUSSION

Plaintiffs seek conditional certification of their FLSA claim and authorization to send Court-supervised notice of this action pursuant to 29 U.S.C. § 216(b). In addition, Plaintiffs also seek class certification of their breach of contract state law claim under Rule 23(a) and (b)(3), including the appointment of Plaintiffs' attorneys as Class Counsel.

1. <u>Conditional Certification of Plaintiffs' FLSA Collective Action</u>

Under the FLSA, an employee may bring an action for unpaid overtime wages "on behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). "These collective actions facilitate judicial and economic efficiency by allowing a single proceeding of claims stemming from common issues of law and fact." *Mebane v. GKN Driveline N. Am., Inc.*, No. 1:18CV892, 2020 WL 6525819, at *1 (M.D.N.C. Nov. 5, 2020) (internal quotations and citation omitted). Certification of a FLSA collective action requires: "(1) the members of the proposed class . . . be 'similarly situated,' and (2) the class members . . . 'opt-in' by filing their consent to suit." *Long v. CPI Sec. Sys., Inc.*, 292 F.R.D. 296, 298 (W.D.N.C. 2013) (citation omitted). Potential class member employees are considered "similarly situated" if they "raise a similar legal issue as to coverage, exemption or nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." *McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 469 (E.D.N.C. 2010) (quoting *De Luna-Guerrero v. N.C. Grower's Ass'n, Inc.*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004)); *see also Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 772 (D. Md. 2008) ("A

8

group of potential plaintiffs are 'similarly situated' when they together were victims of a common policy or scheme or plan that violated the law.").

Certification of a FLSA collective action is generally a two-step process, *see O'Quinn v. TransCanada USA Servs., Inc.*, 469 F. Supp. 3d 591, 604 (S.D.W. Va. 2020) (collecting cases), with courts making "a preliminary determination whether to conditionally certify the class based upon the limited record before the court." *McLaurin*, 271 F.R.D. at 469. As explained in another opinion in this Court:

> At the first stage, known as conditional certification, "the court determines whether the putative [collective action] members' claims are sufficiently similar to merit sending notice of the action to possible members of the [collective action]." *Adams v. Citicorp Credit Servs., Inc.*, 93 F. Supp. 3d 441, 453 (M.D.N.C. 2015) (internal quotation marks omitted). Although "not a 'rubber-stamp approach,'" the conditional-certification standard is "fairly lenient[:]" the plaintiff "need only make a relatively modest factual showing that a common policy, scheme or plan that violated the law exists." *Id.* (internal quotation marks and brackets omitted). Moreover, when evaluating conditional certification, "the Court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations ...." *Id.* at 454 (internal quotation marks omitted).

*Goldston v. Ariel Cmty. Care, LLC*, No. 1:21CV615, 2022 WL 1289673, at *5 (M.D.N.C. Apr. 29, 2022) (unpublished) (footnote omitted).[3] To demonstrate the required showing, Plaintiffs may rely on "affidavits or other means." *Williams v. Long*, 585 F. Supp. 2d 679, 684 (D. Md.

---

[3] As noted in *Adams*, some courts have taken "a more stringent 'similarly situated' inquiry . . . at the conditional certification stage," 93 F. Supp. 3d at 453 n.10; however, the undersigned finds that approach inappropriate here. *See Staley v. UMAR Servs., Inc.*, 630 F. Supp. 3d 707, 712 (M.D.N.C. 2022) ("Because most courts in the Fourth Circuit have declined to use the 'intermediate' approach, *Long*, 292 F.R.D. at 299, and because Defendant has not advocated for it, the Court will use the traditional lenient standard.").

9

2008) (internal quotations and citation omitted) (emphasis omitted). "If the class is conditionally certified, the court typically authorizes plaintiffs' counsel to provide the putative class members with notice of the lawsuit and their right to opt-in." *Long*, 292 F.R.D. at 299 (citation omitted). "The second stage, known as decertification, only occurs if a defendant, usually after discovery is virtually complete, moves to decertify a conditionally certified class." *Hollis v. Alston Pers. Care Servs., LLC*, No. 1:16CV1447, 2017 WL 3327591, at *2 (M.D.N.C. Aug. 3, 2017) (unpublished) (internal quotations and citation omitted).[4]

Upon review of Plaintiffs' motion, the undersigned concludes that Plaintiffs have satisfied the modest factual showing that Defendant implemented a common policy, scheme or plan that violated the rights under the FLSA of Plaintiffs and potential opt-in plaintiffs. Through their declarations, Plaintiffs attest that they are similarly situated to other non-exempt current and former full-time Detention Officers and Corporals in that they share similar job duties and were subject to the same compensation schemes during the relevant period, including Defendant's uniform policy of failing to track hours worked under Section 7(k) of the FLSA, failing to calculate the regular rate for the payment of overtime work, and failing to pay all accrued compensatory time as required by the FLSA. Defendant does not oppose conditional certification in this matter and the cited admissions in his answer noted above further support Plaintiffs' motion. Therefore, the undersigned concludes that conditional certification under Section 216(b) is appropriate for all current and former Detention Officers

---

[4] At the second stage, "a deeper inquiry into the merits is conducted, similar to a Rule 23 certification." *Clark v. Williamson*, No. 1:16CV1413, 2018 WL 1626305, at *2 n.3 (M.D.N.C. Mar. 30, 2018) (unpublished).

and Corporals who worked pursuant to the "Alamance County Sheriff's Office 12 Hour Employee Schedule – Permanent" schedule during the time period from May 5, 2020, through the present.[5]  *See, e.g., Ruiz v. Monterey of Lusby, Inc.*, No. CIV.A. DKC 13-3792, 2014 WL 1793786 (D. Md. May 5, 2014) (finding conditional certification warranted where Plaintiffs submitted declarations demonstrating a modest factual showing and there was no opposition from Defendants).

As to the notification plan, Plaintiffs propose that the Parties "submit a Joint Status Report regarding their efforts to agree on a notification plan, including the contents of the proposed notice form, consent to join lawsuit form, proposal for distribution, and proposal for opt-in period once the Court rules on Plaintiffs' Motion."  (Docket Entry 22 at 13 n.6.)  The undersigned considers that Defendant has not opposed Plaintiffs' Motion, and "parties are routinely ordered to attempt a joint proposal for notice forms and methods of distribution[.]"  *Staley*, 630 F. Supp. 3d at 717; *Galleher v. Artisanal, LLC*, No. 1:19 CV 55, 2019 WL 5680357, at *3 (W.D.N.C. Oct. 31, 2019) (requiring parties to confer on "Plaintiff's proposed notice and opt-in/consent forms, the means and deadline for providing notice to potential plaintiffs, or the commencement and termination of the 'opt-in' period").  Thus, the undersigned finds it appropriate that the parties should confer on the notification plan upon issuance of a final ruling on Plaintiffs' motion.

---

[5] Plaintiffs allege a willful violation of the FLSA.  (*See* Am. Compl. ¶¶ 62, 77.)  "The FLSA imposes a three-year limitation. Therefore, the class may date back . . . three years prior to the filing of this action."  *Adams*, 93 F. Supp. 3d at 456 n.11 (internal citation omitted).

2. <u>Rule 23 Class Certification</u>

Plaintiffs also move for Rule 23 class certification. (Docket Entry 22 at 17-24.) Federal Rule of Civil Procedure 23 sets forth a two-step analysis that governs the standard for class certification. Fed. R. Civ. P. 23. First, the prerequisites (commonly referred to as numerosity, commonality, typicality, and adequacy) require that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if:"

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4); *see also Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003). The Fourth Circuit Court of Appeals has reiterated that:

> the final three requirements of Rule 23(a) tend to merge, with commonality and typicality serving as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

*Brown v. Nucor Corp.*, 576 F.3d 149, 152 (4th Cir. 2009) (internal quotations and citations omitted). In addition, the Fourth Circuit has "repeatedly recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable'" or ascertainable such that the "court can readily identify the class members in reference to objective criteria." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (citation omitted). The moving party "need not be able to identify every class member at the time of

12

certification." *Id.* However, "[i]f class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate." *Id.* (internal quotations and citations omitted).

Upon satisfying Rule 23(a), the moving party must demonstrate that the action falls under one of the three types of classes listed in Rule 23(b). Here, Plaintiffs assert that Rule 23(b)(3) is applicable which states that a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Matters relevant to whether an action satisfies Rule 23(b)(3) are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D). Plaintiffs bear the burden of demonstrating that the class complies with Rule 23. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006). District courts have broad discretion in deciding whether to certify a class. *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010).

### Ascertainability

Plaintiffs contend that the class is ascertainable as the potential members can be identified by objective criteria; that is, from Defendant's records. (Docket Entry 22 at 18.) Plaintiffs propose the class be defined as: "All current and former Detention Officers who

13

worked pursuant to the 'Alamance County Sheriff's Office 12 Hour Employee Schedule – Permanent' schedule during the time period May 5, 2020 through present." (Docket Entry 22 at 5.) Defendant does not dispute that the proposed class is ascertainable, and the undersigned agrees.[6]

### Numerosity, Commonality, Typicality, and Adequacy

Here, the undersigned first concludes that the prerequisites of numerosity, commonality, typicality, and adequacy are satisfied. Plaintiffs allege that the class is comprised of more than 80 persons. (White Decl. ¶ 4; Beers Decl. ¶ 4.) "No specified number is needed to maintain a class action," *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967), and classes numbering less than 20 have been deemed appropriate. *See e.g., id.* Therefore, the undersigned concludes that the numerosity requirement is met.

Second, Plaintiffs have demonstrated that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A single common question will suffice" so long as it is "of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *EQT*, 764 F.3d at 360 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, 359 (2011)). Here, the common legal issue before the Court is whether Defendant breached its contract with the Detention Officers and Corporals by failing to pay them earned wages and benefits for all hours worked and/or scheduled. Plaintiffs have set forth common factual issues between themselves and the putative class, including the

---

[6] As this action was originally initiated on May 5, 2023, and the statute of limitations for a North Carolina state law breach of contract claim is 2 years, *see* N.C. Gen. Stat. § 1-53(1), the undersigned concludes that the duration of Plaintiffs' class period should begin May 5, 2021, rather than May 5, 2020. *See Conner v. Cleveland Cnty., N. Carolina*, No. 1:18-CV-00002-MR-WCM, 2023 WL 3081295, at *12 n.13 (W.D.N.C. Apr. 24, 2023).

14

similar Rotating Schedule for work, receipt of the same training and performance of the same law enforcement duties, all earning accrued benefits pursuant to the same benefits policy, the eligibility to work additional time, and all ultimately being subject to Defendant's same alleged breaching contractual conduct. The commonality prerequisite is therefore satisfied.

Third, the typicality requirement is met. Plaintiffs' breach of contract claim arises from the same underlying facts as the putative class members. Again, "the key question in determining typicality is whether the interests of the class members will be fairly and adequately protected in their absence." *Sims v. BB & T Corp.*, No. 1:15-CV-732, 2017 WL 3730552, at *4 (M.D.N.C. Aug. 28, 2017) (internal quotations and citation omitted). Therefore, the typicality requirement is met here because "the claims asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the unnamed class members." *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 65 (M.D.N.C. 2008) (internal quotations and citation omitted).

Next, Plaintiffs have demonstrated that they will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This subpart "serves to uncover conflicts of interest between named parties and the class they seek to represent" as well as to evaluate "competency and conflicts of class counsel." *Clark v. Duke Univ.*, No. 1:16-CV-1044, 2018 WL 1801946, at *7 (M.D.N.C. Apr. 13, 2018) (internal quotations and citation omitted). Here, Plaintiffs have no conflicts or antagonistic interests with the interests of any other Detention Officers or Corporals. (Gibbons, Jr. Decl. ¶ 9.) In addition, as set forth above, Plaintiffs' counsel has the necessary skill, experience, and qualifications to adequately represent the interests of the class. (*See id.* ¶¶ 1-8; *see also* Fed. R. Civ. P. 23(g).) Therefore, Plaintiffs' counsel

15

should be appointed class counsel. *See Lewis v. Precision Concepts Grp., LLC*, No. 1:18CV64, 2019 WL 13143749, at *4 (M.D.N.C. July 29, 2019) ("Based on the information set out in the Motion and supporting Memorandum, it appears that proposed counsel has sufficient experience and is capable of conducting this type of litigation, and will be preliminarily approved as counsel.").

## Rule 23(b)(3) Requirement

Plaintiffs also move for class certification based on the requirements of Rule 23(b)(3). As previously stated, Rule 23(b)(3) certification may be obtained if "the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members," and "a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). Thus, the two aspects of this requirement are predominance and superiority. As explained by this Court:

> First, the predominance requirement tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation" and is satisfied when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." *Gariety v. Grant Thornton, LLP,* 368 F.3d 356, 362 (4th Cir. 2004); *see also* Fed. R. Civ. P. 23(b)(3). "A common question is one that can be resolved for each class member in a single hearing" rather than one that "turns on a consideration of the individual circumstances of each class member." *Thorn,* 445 F.3d at 319. The predominance requirement focuses on the quality of common issues rather than just the quantity. *See Gunnells*, [348 F.3d at 429]; *see also EQT,* 764 F.3d at 366 (noting that, to satisfy predominance, the plaintiff must show that the defendant's common conduct has sufficient bearing on the central issue in the litigation). Second, "[t]he superiority requirement ensures that 'a class action is superior to

> other available methods for the fair and efficient adjudication of the controversy.'" *Thorn,* 445 F.3d at 319 (quoting Fed. R. Civ. P. 23(b)(3)).

*Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 394 (M.D.N.C. 2015), *aff'd*, 925 F.3d 643 (4th Cir. 2019).

Here, the undersigned concludes that the legal and factual issues surrounding Defendant's alleged breach of contract in the manner in which Detention Officers and Corporals were compensated, *see* Compl. ¶¶ 20-37, is common to all proposed members of the class and predominate over any issues affecting individual members. *See Adams v. Sitel Operating Corp.*, No. 1:16CV1051, 2019 WL 13296014, at *6 (M.D.N.C. Jan. 24, 2019) ("The 'qualitatively overarching issue' in this case is whether [defendant] is liable for compensation due to its Work@Home Agents for off-the-clock work performed before, during, and after each shift."). If Defendant's policy and practice of only paying Detention Officers and Corporals for 173.33 hours per month, regardless of the number of hours worked, resulted in the underpayment of earned wages or accrued benefits for Plaintiffs, all other putative class will have suffered the same injury. *See Conner*, 2023 WL 3081295, at *15 ("If Cleveland County contracted with . . . employees to pay them . . . for non-overtime hours and then paid them less than that, then it breached the contract . . . . Accordingly, the question at issue—whether the breach resulted in damages—is common to all class members.").

Moreover, a class action is the superior method for proceeding in this matter. Plaintiffs contend that "[a] class action also allows class members to seek relief from Defendant's underpayment of regular and overtime wages without fear of retaliation." (Docket Entry 22 at 24.) "The prospect of retaliation against employees for joining [a] lawsuit only heightens

17

the need for class-wide resolution[.]" *Jones v. Fid. Res., Inc.*, No. CV RDB-17-1447, 2019 WL 4141015, at *11 (D. Md. Aug. 30, 2019). Moreover, a single action here would promote judicial efficiency. *See Lorenzo v. Prime Commc'ns, L.P.*, No. 5:12-CV-69-H(2), 2014 WL 10987818, at *6 (E.D.N.C. Jan. 15, 2014) ("[I]nterests of judicial efficiency would be promoted by having the putative class members' claims adjudicated in a single proceeding, rather than in multiple, individual suits."), *report and recommendation adopted*, No. 5:12-CV-69-H, 2014 WL 10935944 (E.D.N.C. Mar. 24, 2014), *amended*, No. 5:12-CV-69-H, 2018 WL 1535476 (E.D.N.C. Mar. 29, 2018). Therefore, for the above reasons, Plaintiffs satisfy the requirements of Rule 23(b)(3).

## III. <u>CONCLUSION</u>

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's Unopposed Motion for Collective and Class Certification (Docket Entry 21) be **GRANTED**, with modifications to the class definition, in that:

1. Plaintiffs' claim under the FLSA be conditionally certified as a collective action under 29 U.S.C. § 216(b), and the conditionally certified FLSA class be identified as "all current and former Detention Officers and Corporals who worked pursuant to the 'Alamance County Sheriff's Office 12 Hour Employee Schedule – Permanent' schedule during the time period May 5, 2020 through present;"

2. Plaintiffs' claim for breach of contract under North Carolina law be certified as a class action pursuant to Fed. R. Civ. P. 23(b)(3), and the certified class be defined as "all current and former Detention Officers Detention Officers and Corporals who worked pursuant to the 'Alamance County Sheriff's Office 12 Hour Employee

18

Case 1:23-cv-00367-TDS-JLW   Document 29   Filed 06/06/24   Page 18 of 19

Schedule – Permanent' schedule during the time period May 5, 2021 through present;" and

3. The Court appoint Philip J. Gibbons, Jr., and Corey M. Stanton of Gibbons Law Group, PLLC as Class Counsel.

**IT IS FURTHER RECOMMENDED** that the parties be directed to confer and to submit to the Court a Joint Status Report, within thirty (30) days of the date upon a ruling on this recommendation, regarding their efforts to agree on a notification plan, including an appropriate notice form, consent form, manner of distribution, and opt-in deadline.

/s/ Joe L. Webster
United States Magistrate Judge

June 6, 2024
Durham, North Carolina