# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANDREW S. BEERS and | ) | |
| KATHERINE WHITE, individually and | ) | |
| on behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:23CV367 |
| | ) | |
| TERRY S. JOHNSON, in his official | ) | |
| capacity as SHERIFF OF ALAMANCE | ) | |
| COUNTY, NORTH CAROLINA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendant Terry S. Johnson's ("Defendant") Motion for Summary Judgment. (Docket Entry 33.) Plaintiffs Andrew S. Beers ("Beers") and Katherine White ("White") (collectively, "Plaintiffs") initially brought claims against Defendant for alleged violation of the Fair Labor Standards Act ("FLSA") and breach of contract under North Carolina law. ("Compl.," Docket Entry 1.) Plaintiffs have filed a Response (Docket Entry 40), and Defendant has filed a Reply. (Docket Entry 47.) The matter is ripe for disposition. For the reasons stated herein, the undersigned recommends that Defendant's Motion for Summary Judgment be denied.

## I.   BACKGROUND

### a.  Procedural Background

On May 5, 2023, Plaintiffs initiated this action (Compl.); on October 16, 2023, they filed an Amended Complaint ("Am. Compl.," Docket Entry 15). Plaintiffs attached 17 exhibits to

1

the Amended Complaint, including Beers' Paystubs, Timecards, and Check Details, and a 2023 Detention Officer Job Posting. (Docket Entries 15-1 through 15-17.) On October 30, 2023, Defendant filed an Answer to the Amended Complaint. ("Def.'s Answer," Docket Entry 16.) On June 6, 2024, this Court granted Plaintiffs' Unopposed Motion for Collective and Class Certification. (Docket Entry 29; *see also* Docket Entries 21, 32.)[1] On July 1, 2024, Defendant filed a Motion for Summary Judgment. (Docket Entry 33; *see also* Docket Entry 34.)

Defendant attached 21 exhibits to his memorandum in support of said motion, including Employee Handbooks, Payroll Detail Histories, Time Details, Employment Offers, a 2024 Detention Officer Job Posting, a Sheriff's Office Policy and Procedure Manual, and Rotating Schedules. (Docket Entries 34-2 through 34-16.) On August 14, 2024, Plaintiffs filed a Response in opposition to Defendant's Motion for Summary Judgment (Docket Entry 40), a second Declaration by Beers (Declaration of Plaintiff Andrew S. Beers ("Second Beers Decl."), Docket Entry 41), and a Declaration by Corey M. Stanton ("Stanton") (Declaration of Attorney Corey M. Stanton ("Stanton Decl."), Docket Entry 42) that included attachments of Beers' Time Details and Stanton's calculations of Beers' compensable hours. (Docket Entries 42-1, 42-2.) On September 18, 2024, Defendant filed a Reply to Plaintiffs' Response. (Docket Entry 47.)

### b. Factual Background

As set out in the Amended Complaint, Plaintiffs bring two counts: (1) a collective action against Defendant "for [willful] violation of the [FLSA], 29 U.S.C. § 216(b)" (Am. Compl. at 1; *see also id.* ¶¶ 62, 74-77), and (2) a class action, on behalf of themselves and all

---

[1] *Beers v. Johnson*, No. 1:23CV367, 2024 WL 2862044 (M.D.N.C. June 6, 2024), *report and recommendation adopted*, No. 1:23CV367, 2024 WL 3161624 (M.D.N.C. June 25, 2024).

others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure, against Defendant for breach of contract under North Carolina law. (*Id.* ¶¶ 78-81.)

Specifically, since 2019, Beers, a Detention Officer, and White, a Detention Corporal,[2] have both been employed as "12 Hour Employee[s]" who are paid monthly for their work at the Alamance County Detention Center, where they perform various job duties related to the custody, care, and security of inmates. (*Id.* ¶¶ 3-4, 14-17.) The "Alamance County Sheriff's Office 12 Hour Employee Schedule – Permanent" schedules Detention Officers on a 14-day "rotating schedule that consists of two days on, followed by two days off, followed by three days on, followed by two days off, followed by two days on, followed by three days off ([the] 'Rotating Schedule')." (*Id.* ¶ 20.) Each shift amounts to 12.25 hours, and Detention Officers "are scheduled to work between 14-17 shifts per month" under the Rotating Schedule, which, depending on the rotations, equates to "between 171.5 hours and 208.25 hours per month." (*Id.* ¶¶ 20-21.)

Detention Officers may work additional time, including time scheduled for training, but Plaintiffs allege that "[r]egardless of the actual number of hours Detention Officers … work under the Rotating Schedule, Defendant only pays [them] 173.33 hours per month for these hours." (*Id.* ¶¶ 22-23; *see also* Docket Entry 15-3.) For example, during one pay period Plaintiffs allege that Beers worked a total of 197.75 Rotating Schedule work hours and additional hours for training but was paid for only 173.33 hours of work. (Am. Compl. ¶ 25; *see also* Docket Entries 15-4 through 15-6.) Plaintiffs allege that during another pay period White accrued hours in excess of 173.33 for which she was not compensated. (Am. Compl. ¶ 26.)

---

[2] "Corporal" is one of the ranks of the Detention Officer position. (*See* Am. Compl. ¶ 15.) Further reference in this opinion to "Detention Officers" incorporates Corporals.

3

Plaintiffs also allege that Detention Officers are entitled to paid holidays, earn paid vacation days and paid sick time according to a formula applicable to Alamance County employees, earn compensatory time ("Comp Time") "pursuant to Section 7(k) of the FLSA,"[3] and "earn two hours of paid 'Birthday' pay per year." (*Id.* ¶¶ 27-30, 38.) When absent from a scheduled shift, Detention Officers "utilize accrued benefits," including Comp Time, in a specific order. (*Id.* ¶ 31.) However, Plaintiffs allege that when Detention Officers "utilize Vacation Leave, Holiday pay, Sick Leave and/or Birthday pay to cover absences for Rotating Schedule work hours exceeding 173.33 per month, Defendant fails to pay Detention Officers . . . all earned and accrued benefits." (*Id.* ¶ 32.) Both Beers and White experienced inadequate compensation as a result of this failure. (*See id.* ¶¶ 33-34.) Moreover, Plaintiffs allege that when Detention Officers use Comp Time to cover absences for their Rotating Schedule work hours that exceed 173.33 per month, Defendant, in violation of the FLSA, "fails to pay Detention Officers … all accrued [Comp Time] off[.]" (*Id.* ¶¶ 44-46.) Specifically, Plaintiffs allege that Defendant both fails to pay Plaintiffs the correct pay rate for the hours of Comp Time they utilize and fails to pay them any compensation for the hours of Comp Time and paid leave they utilize in excess of 173.33 hours per month. (*See id.*)

Further, Plaintiffs allege that Defendant implemented a pay increase for Detention Officers "[i]n or about January 2022." (*Id.* ¶ 35.) As such, they "are paid [a] monthly $333.33 'shift differential' " and "Defendant's payroll records denote the $333.33 payment as 'Shift Diff' or 'SD.' " (*Id.*) However, Defendant does not include the "shift differential" "when calculating … rates of pay for the accrued compensatory time off for the Comp Time Taken Hourly that Defendant pays Detention Officers[.]" (*Id.* ¶ 47.) Rather, Defendant pays them

<hr>

[3] "Section 7(k)" is used as shorthand to refer to 29 U.S.C. § 207(k).

4

at "their base hourly rates of pay," which Plaintiffs allege is a separate violation of the overtime provisions of the FLSA. (*Id.*) Plaintiffs allege that both Beers and White experienced inadequate compensation as a result of this. (*See id.* ¶¶ 48-49.)

Plaintiffs also allege that Detention Officers earn paid overtime for additional hours worked outside of the Rotating Schedule, which "Defendant denotes [as] 'Detention OT' or 'OT 1.5.'" (*Id.* ¶ 50.) They allege Defendant neither tracks nor records Detention OT hours on the same schedule utilized for Rotating Schedule hours (instead tracking them from mid-month to mid-month), and that "Defendant does not include the $333.33 shift differential … when calculating the regular rate of pay for calculating Detention OT." (*Id.* ¶¶ 50-53.) Moreover, Plaintiffs allege that "Defendant does not include Detention OT hours worked in its FLSA Section 7(k) calculation of hours worked in a 14-day period for purposes of determining when Detention Officers are eligible for [Comp Time] by exceeding the 86-hour threshold." (*Id.* ¶ 54.) Finally, Plaintiffs allege that Defendant's violations of the FLSA were willful and seek an award of liquidated damages for unpaid compensation, attorneys' fees, costs, and interest. (*Id.* ¶¶ 2, 62, 77; *see also id.* at 21-22.)

Defendant admits, in pertinent part, that: (1) Defendant pays Detention Officers on a monthly basis (Def.'s Answer ¶ 17); (2) Detention Officers are scheduled to work the Rotating Schedule (*id.* ¶ 20); (3) Detention Officers accrue Comp Time for all Rotating Schedule hours worked over 86 hours in a 14-day period (*id.* ¶ 38); (4) Detention OT is paid at one and one-half times the Detention Officer's base hourly rate of pay (*id.* ¶ 50); (5) Defendant does not include the $333.33 "shift differential" paid to Detention Officers when calculating the regular rates of pay for Comp Time nor for calculating Detention OT (*id.* ¶¶ 47, 53); and (6) Defendant does not include Detention OT hours worked in its FLSA Section 7(k) calculation of hours

5

worked in a 14-day period for purposes of determining when Detention Officers and Corporals are eligible for Comp Time by exceeding the 86-hour threshold (*id.* ¶ 54).

## II.    **DISCUSSION**

In response to Plaintiffs' allegations, Defendant argues that Detention Officers are paid utilizing a compensation structure based on the fluctuating workweek ("FWW") method set forth in 29 C.F.R. § 778.114 and contends that the pay plan was lawful and in compliance with the FLSA and all applicable rules and regulations. (*See generally* Docket Entries 33, 34, 47.) Accordingly, Defendant has denied Plaintiffs' claims and any resulting liability. (*See id.*) Defendant now seeks summary judgment in his favor on Plaintiffs' claims that he violated the FLSA and North Carolina contract law. (Docket Entries 33, 34.)

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F. 3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cnty. Comm'rs*, 945 F. 2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met their burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F. 3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear their burden

either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F. 3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F. 3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the Court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F. 3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248-49. Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment[.]" *Anderson*, 477 U.S. at 255.

### a. The FWW method of calculating overtime compensation applies to Plaintiffs.

At the outset, Plaintiffs argue that the FWW is inapplicable to them because they are employees who receive Comp Time, and that the FWW is "irrelevant to Plaintiffs' lawsuit." (*See* DE 40 at 3-4.) The undersigned disagrees. Courts have approved the use of the FWW method where employees received additional compensation in the form of compensatory time off. *Mayhew v. Wells*, 125 F. 3d 216, 219 (4th Cir. 1997); *see also Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 101 (D.D.C. 1998); *Scott v. OTS Inc.*, No. CIV.A.1:02CV1950-AJB, 2006 WL 870369, at *12 (N.D. Ga. Mar. 31, 2006) (unpublished). Thus, the FWW method applies to Plaintiffs.

However, the fact that the FWW method applies does not necessarily make it appropriate. In *Mayhew*, the Court determined that the use of the FWW method was appropriate because the employer and employee at issue in that case had, per § 778.114, reached the requisite

7

" 'clear mutual understanding' … that the fixed salary is to be compensation for all straight time hours worked, whether few or many." *Id.* Conversely, when material evidence conflicts regarding the existence of said understanding, it creates a genuine issue of fact as to whether the FWW is an appropriate method of compensation, and summary judgment in favor an employer defendant is inappropriate. *Baclawski v. Fioretti*, No. 3:15-CV-417-DCK, 2017 WL 3037394, at *6 (W.D.N.C. July 18, 2017) (unpublished); *Burgess v. Catawba County*, 805 F. Supp. 341, 347-48 (W.D.N.C. 1992). For the reasons that follow, the undersigned finds that a genuine issue of material fact exists here as to said understanding and thus as to whether the FWW is an appropriate compensation method. Accordingly, the Court turns now to a discussion of the parties' arguments regarding this issue.

### b. A genuine issue of material fact exists as to whether Defendant paid Plaintiffs properly pursuant to the FWW method and the FLSA.

Defendant argues that he has paid Plaintiffs and collective members properly pursuant to the FWW method and the FLSA (Docket Entry 34 at 9). *See* 29 C.F.R. § 778.114[4] (interpretative bulletin clarifying how and when employees may use the FWW method to calculate overtime pay under FLSA Section 7(k)); *see also* 29 C.F.R. § 553 (setting forth regulations to carry out FLSA provisions). In pertinent part, Defendant argues that there is a clear mutual understanding that

---

[4] The employer bears the burden of proof under § 778.114. *Monahan v. Cnty. of Chesterfield, Va.*, 95 F. 3d 1263, 1275 n.12 (4th Cir. 1996). 29 C.F.R. § 778.114 is an official DOL interpretation, not a formally promulgated regulation. *Mayhew*, 125 F. 3d at 218. DOL interpretive bulletins "such as the one contained in 29 C.F.R. pt. 778 … 'while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 357 n.2 (4th Cir. 2011) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). The First Circuit has held that § 778.114 represents the Secretary of Labor's implementation of the holding in *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 580 (1942), *superseded on other grounds by statute as stated in Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 n.22 (1985), and indicated that the regulation has binding effect. *See Martin v. Tango's Restaurant, Inc.*, 969 F. 2d 1319, 1324 (1st Cir. 1992); *O'Brien v. Town of Agawam*, 350 F. 3d 279, 287 (1st Cir. 2003).

8

Defendant will pay Plaintiffs a fixed weekly salary regardless of hours worked. (Docket Entry 34 at 13.) Plaintiffs disagree; they argue that Defendant "cannot avail itself of the [FWW method] because it does not satisfy [its] requirements[,]" including the requirement of said clear mutual understanding. (Docket Entry 40 at 6.) In order to address these arguments, it is first necessary to discuss the applicable FLSA and FWW case law, statutes, and regulations.

The FLSA "is a remedial statute designed to 'eliminate … substandard labor conditions' in the United States." *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117, 124 (E.D.N.C. 2011) (quoting *Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 510 (1950)); *see also Regan v. City of Charleston, S.C.*, 131 F. Supp. 3d 541, 545 (D.S.C. 2015). The FLSA requires the payment of a minimum wage and provides specific limits on the maximum hours an employee may work without receiving the requisite overtime compensation. *Trejo v. Ryman Hosp. Props., Inc.*, 795 F. 3d 442, 446 (4th Cir. 2015) (quoting *Monahan*, 95 F. 3d at 1267 (citing 29 U.S.C. §§ 206(a), 207(a))). "The FLSA is clearly structured to provide workers with specific minimum protections against excessive work hours and substandard wages." *Monahan*, 95 F. 3d at 1267 (citing *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). The "FLSA should be given a broad reading, in favor of coverage. It is a remedial statute that 'has been construed liberally to apply to the furthest reaches consistent with congressional direction.'" *Id.* (cleaned up).

The FLSA "generally requires employers to compensate employees at the overtime rate for all work performed over 40 hours per week." *Roy v. Cnty. of Lexington, S.C.*, 141 F. 3d 533, 538 (4th Cir. 1998); *see also Flood v. New Hanover Cnty.*, 125 F. 3d 249, 251 (4th Cir. 1997); 29 U.S.C. § 207(a)(1). However, Section 7(k) of the FLSA "provides a partial exemption for those public agencies employing [law enforcement personnel], by increasing the number of hours such employees must

9

work above the regular 40-hour workweek before they are entitled to overtime compensation." *Roy*, 141 F. 3d at 537. A public employer need not compensate correctional employees like Plaintiffs at the overtime rate until they have worked an aggregate 86 hours for a work period of 14 consecutive days. *See id.* at 538-39 (citing 29 U.S.C. § 207(a)(1)); 29 C.F.R. § 553.230.[5]

> Although the FLSA provides different methods by which employers may calculate compensation to ensure that they pay their employees in a manner that complies with the FLSA's minimum wage and overtime provisions, covered employees are entitled to receive overtime compensation whether they are paid on an hourly basis or are paid a salary.

*Regan*, 131 F. Supp. 3d at 546 (citing 29 C.F.R. §§ 778.110, 778.113). "[T]he FLSA generally requires overtime compensation 'at a rate not less than one and one-half times the regular rate at which he is employed.'" *Id.* (citing 29 U.S.C. § 207(a)(1)). Thus, the "keystone" of § 207(a)(1) is the regular rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945).

"As a general rule, an employee's 'regular rate' is the hourly rate that the employer pays the employee for the normal, nonovertime forty-hour workweek." *Flood*, 125 F. 3d at 251 (citing *Walling*, 325 U.S. at 424); 29 C.F.R. §§ 778.109, 778.110. However, the fact that the regular rate is expressed as an hourly rate does not mean that employers must pay their employees by the hour to comply with the FLSA's mandates; "employees may, in practice, be paid in a variety of other ways[.]" *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F. 3d 665, 673 (7th Cir. 2010). "Thus, the method of calculating an employee's regular rate depends on the manner in which the employee is compensated." *Regan*, 131 F. Supp. 3d at 546.

---

[5] "For those employees engaged in law enforcement activities (including security personnel in correctional institutions) who have a work period of at least 7 but less than 28 consecutive days," no overtime compensation is required under Section 7(k) "until the number of hours worked exceeds the number of hours which bears the same relationship to 171 as the number of days in the work period bears to 28." 29 C.F.R. § 553.230(b). "[T]he ratio of 171 hours to 28 days for employees engaged in law enforcement activities is 6.11 hours per day (rounded)." *Id.* at (c). "Accordingly, [for such employees whose work period is 14 days,] overtime compensation (in premium pay or [Comp Time]) is required for all hours worked in excess of [86]." *Id.*

"Logically, this regular rate determination is quite simple for employees paid strictly on an hourly basis—the regular rate is the employee's hourly rate or wage." *Id.* (citing 29 C.F.R. § 778.110). "If the employer employs an employee on a weekly salary basis, it determines the employee's [regular rate] by dividing the weekly salary by the number of hours that it intends the weekly salary to compensate." *Flood*, 125 F. 3d at 251 (citing 29 C.F.R. § 778.113). "Calculating overtime pay becomes more complicated, however, when an employee is paid a fixed weekly salary for hours that fluctuate each week." *Regan*, 131 F. Supp. 3d at 546 (citing *Wills v. RadioShack Corp.*, 981 F. Supp. 2d 245, 254 (S.D.N.Y. 2013)). "For such employees, employers are permitted to use the FWW method to comply with the FLSA's overtime requirement." *Id.*

The FWW method applies to employees who are paid a fixed weekly salary for all hours worked but who work irregular, fluctuating, or variable hours. *See id.* at 546-50 (extensively detailing the history of the FWW method); *see also* 29 C.F.R. § 778.114. Employers calculate such employees' regular rates under the FLSA by dividing the employee's fixed weekly salary by the actual number of hours worked during that workweek or work period.[6] 29 C.F.R. § 778.114; *see also Overnight*, 316 U.S. at 580; *Wills*, 981 F. Supp. 2d at 254.

It is appropriate under the FLSA to pay an employee a flat weekly salary for fluctuating hours so long as a premium is also paid of at least 'fifty per cent additional for the hours actually worked over the statutory maximum.' " *Wills*, 981 F. Supp. 2d at 254 (quoting *Missel*, 316 U.S. at 581). Overtime compensation with Comp Time in lieu of pay is also appropriate under the

---

[6] 29 C.F.R. §§ 553.200–33 provide details regarding the application of the FLSA to, in pertinent part, law enforcement employees of public agencies. These regulations, among other things, address law enforcement activities (§ 553.211), discuss compensable hours of work (§ 553.221), define "Work Period" (§ 553.224) and "Regular Rate" (§ 553.233), and set rules regarding maximum hours (§ 553.230), compensatory time off (§ 553.231; *see also* §§ 553.20–28), and overtime pay requirements (§ 553.232).

11

FLSA (and, again, compatible with the FWW method, *see Mayhew*, 125 F. 3d at 219-21), so long as the rate of Comp Time given is "not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section." 29 U.S.C. § 207(o); 29 C.F.R. § 778.114; *see also* 29 C.F.R. §§ 553.20–28. Ultimately, the Fourth Circuit has held that § 778.114 suggests that before an employer can pay an employee pursuant to the FWW method, it must meet the following requirements (sometimes referred to as "factors" or "conditions"):

> 1) the employee's hours must fluctuate from week to week; 2) the employee must receive a fixed weekly salary that remains the same regardless of the number of hours that the employee works during the week; 3) the fixed amount must be sufficient to provide compensation at a regular rate not less than the legal minimum wage; 4) the employer and the employee must have a clear, mutual understanding that the employer will pay the employee the fixed weekly salary regardless of the hours worked; and 5) the employee must receive a fifty percent overtime premium in addition to the fixed weekly salary for all hours that the employee works in excess of forty during that week.

*Flood*, 125 F. 2d at 252 (citing 29 C.F.R. § 778.114; *Condo v. Sysco Corp.*, 1 F. 3d 599, 601-02 (7th Cir. 1993)); *Geise v. Brunswick Cnty., N. Carolina*, No. 7:05-CV-42-FL, 2006 WL 8439061, at *4 (E.D.N.C. Oct. 23, 2006) (unpublished); *Griffin v. Wake Cnty.*, 142 F. 3d 712, 715 (4th Cir. 1998).

Again, in pertinent part, Plaintiffs argue that Defendant has not satisfied the fourth *Flood* factor, the FWW's "clear mutual understanding" requirement. (Docket Entry 40 at 8-9.) For the reasons that follow, the undersigned agrees, and therefore recommends that Defendant's motion for summary judgment as to Plaintiffs' FLSA claims should be denied.

### i. A genuine issue of material fact exists as to whether Plaintiffs and Defendant had a clear mutual understanding about the compensation method.

Defendant argues that "Plaintiffs and Collective Members know, or should know, what the terms of their compensation are, where the [FWW] pay plan is clearly stated in the relevant personnel policies … and they are paid a consistent salary regardless of the hours worked."

12

(Docket Entry 34 at 15 (citing 2023 Job Posting (Docket Entry 15-2), 2024 Job Posting (Docket Entry 34-14), 2019 Employee Handbook (Docket Entry 34-3), 2023 Employee Handbook (Docket Entry 34-2)).)  Defendant further argues that "Plaintiffs have accepted paychecks for each pay period worked … and routinely work hours above and below the fixed number of 173.33 hours per pay cycle." (*Id.* (citing Am. Compl. ¶ 23, Payroll Detail Histories from 2021 through 2024 (Docket Entries 34-4 through 34-7), Time Details from 2021 through 2024 (Docket Entries 34-8 through 34-11)).)  Defendant argues that "Plaintiffs 'accrue compensatory time for all Rotating Schedule hours worked over 86 hours in a 14-day period,' and are 'paid overtime for additional hours worked outside of the Rotating Schedule.' " (*Id.* (citing Am. Compl. ¶¶ 21, 38, 50; Moricle Aff. ¶¶ 8 through 13, 16).)  "Consequently," he argues, "any claim that Plaintiffs lack a clear understanding of the pay plan is not credible in light of the evidence before this Court, and at best, merely demonstrates their subjective disagreement with the plan's terms.  Therefore, the fourth *Flood* element is met." (*Id.* at 15-16.)

To support this conclusion, Defendant argues that the FLSA does not place "the burden on the employer to hold an employee's hand and specifically tell [them] that the salary 'fully compensates [them] up to the overtime threshold,' if that fact can be easily gleaned from employment policies, practices, and procedures." (*Id.* at 15-16 (citing *Monahan*, 95 F. 3d at 1273-75; *Roy*, 141 F. 3d at 547; *Griffin*, 142 F. 3d at 717; *Bailey*, 94 F. 3d at 157; and *Geise*, 2006 WL 8439061 at *6).)  Defendant argues that "[o]ur courts have routinely held this element is established under facts analogous to the present." (*Id.* at 14.)

The undersigned disagrees.  Defendant is correct that § 778.114 requires no more than a clear mutual understanding of the basic message that employees will be paid a fixed amount of

13

straight-time pay if they work any regular hours during a work period, and that each of the cases they cite contains a finding that the fourth *Flood* requirement was satisfied. However, said cases are distinguishable from the instant case. Further discussion of them shows that Plaintiffs have done more than allege a mere subjective disagreement with the pay plan's terms, and that ultimately, there exists a genuine issue of material fact as to whether the fourth *Flood* requirement is met.

The determination in *Monahan* that "[e]ven if parties never expressly agree to the terms of employment, an agreement can easily be implied from their conduct[,]" relied, in pertinent part, on *Zoltek v. Safelite Glass Corp.*, 884 F. Supp. 283, 286 (N.D. Ill. 1995), in which the court reasoned:

> Where the parties' actions and the circumstances demonstrate that the plaintiff was aware of a particular condition of employment, the employee's acceptance of, and continued, employment manifests acceptance of the condition. *However, if the employee contemporaneously protests, there is no implied agreement to the condition.*

*Monahan*, 95 F. 3d at 1275 (emphasis added). In *Roy*, the court found a clear mutual understanding because the employer produced evidence of having individual conversations and discussions with every employee explaining the FWW method of compensation, apprising employees of the FWW method via the employee handbook and personnel forms, distributing a memorandum to all relevant employees that "a fluctuating pay plan will be used to compute overtime pay," and not listing an hourly rate on paychecks. *See Roy*, 141 F. 3d at 547.

In *Griffin*, the court found that the employer, during an eight-year span of utilizing the FWW method, had made "diligent efforts" to inform employees about the FWW method and "took pains" to explain it to them, and that the employees only first complained about the pay scheme at issue after nearly six years of "liv[ing] with the [FWW] plan." *Griffin*, 142 F. 3d at 716-17. In *Bailey* the court clarified that "[n]either [§ 778.114] nor the FLSA in any way indicates that an employee must also understand the manner in which his or her overtime pay is calculated." *Bailey*,

14

94 F. 3d at 156. Notably, however, the court in *Bailey* did not reach the issue of how an employee's complaints about the FWW affect the analysis of whether a clear mutual understanding existed.

In *Geise*, the "plaintiffs themselves expressed through deposition testimony that they possessed a clear understanding that their compensation plan consisted of a base salary, a half-rate premium for regularly scheduled overtime hours and a time and one-half rate for unscheduled overtime." *Geise*, 2006 WL 8439061, at *6. Furthermore, the court relied on *Valerio v. Putnam Associates Inc.*, 173 F. 3d 35, 39-40 (1st Cir. 1999), and again on *Zoltek*, 884 F. Supp. at 286-87, as authority supporting its finding that the plaintiffs having worked for three years under the FWW was evidence of the requisite clear mutual understanding. *Id.* at *7. *Geise*, however, provides for a more robust analysis than Defendant utilizes in his argument:

> "The Fourth Circuit has held that a clear mutual understanding existed where employees knew they were paid a salary based on the following factors: information given when hired, personnel forms which indicated compensation was 'salaried,' pay checks with no hourly rate shown, explicit statements in the employee handbook, at least one instance of personnel directly discussing the pay plan at an in-service training session, a memo indicating the use of a fluctuating pay plan, and [admission by Plaintiff(s)] that [they] knew [they were] paid at half-time overtime."

*Geise*, 2006 WL 8439061 at *6-7 (citing *Roy*, 141 F. 3d at 547 (4th Cir. 1998)).

Here, as in *Geise*, "there was no evidence presented regarding a formal explanation of the pay plan such as that in *Roy*," and, construing the evidence in the light most favorable to Plaintiffs, "the employment handbook[s] in the present case [are] ambiguous at best." *Id.* at *6.[7]

---

[7] The 2023 Handbook states, "Employees will be paid a fixed monthly salary. In addition, employees will receive overtime compensation computed at half-time pay for hours worked over 40 in a given workweek (according to … 29 C.F.R. 778.114)." (Docket Entry 34-2 at 15.) Both Handbooks state, "Non-exempt employees under the [FLSA] will be granted [Comp Time] at one and one-half time if [Comp Time] cannot be taken within the scheduled workweek." (*Id.*; Docket Entry 34-3 at 10.) The 2019 Handbook states, "[o]vertime for employees of the Emergency Medical Services and the Central Communications Department shall be based on the [FWW] Plan. Employees will be paid a fixed

Further contributing to the ambiguity are the Job Postings' use of both "salary" and "hourly" to describe the Detention Officer position (Docket Entry 15-2 at 1; *see also* Am. Compl. ¶ 18; Docket Entry 34 at 2; Docket Entry 34-14 at 1) and the hourly rates shown on Check Details (*see, e.g.*, Docket Entries 15-3, 15-6, 15-9, 15-11, 15-17) and Paystubs (*see, e.g.*, Docket Entries 15-5, 15-8, 15-10, 15-14, 15-16; *see also* Docket Entries 41-1 through 41-5). Unlike in *Geise*, here Plaintiffs have not expressed through testimony that they possessed a clear understanding of any aspect of Defendant's compensation method. *See Geise*, 2006 WL 8439061 at *6.

Nevertheless, the Court in *Geise* emphasized that "the existence of [a clear, mutual] understanding can be 'based on the implied terms of [an] employment agreement if it is clear from the employee's actions that [they] understood the payment plan in spite of after-the-fact verbal contentions otherwise.' " *Id.* at *7 (citing *Mayhew*, 125 F. 3d at 219; quoting *Monahan*, 95 F. 3d at 1281); *see also Griffin*, 142 F. 3d at 716-17 (holding that where EMT employees had been paid pursuant to the FWW for eight years, they had "received a regular lesson—in the form of their paychecks—about how the [FWW] plan operates").

"Other courts have also accepted the idea that continuing to work under a payment plan *without complaint* for a period of time, even when notably shorter than [three years], supports the conclusion that the requirement of a clear, mutual understanding has been satisfied." *Geise*, 2006 WL 8439061 at *7 (emphasis added) (citing *Valerio*, 173 F. 3d at 39-40 (holding that working without complaint for 11 months was sufficient to meet the clear mutual

---

monthly salary." (Docket Entry 34-3 at 10.) "In addition, employees will receive overtime compensation computed at half-time pay for hours worked over 40 in a given workweek (according to … 29 C.F.R. 778.114)." (*Id.*) Notably, the FWW is said to apply only to EMS and CCD employees. "Non-exempt employee" is not defined in the 2019 Handbook, nor are "detention officers" ever mentioned. (*See id.*)

understanding requirement); *Zoltek*, 884 F. Supp. at 286-87 (same requirement met where employee worked fluctuating hours for 30 months for the same salary without complaint)).[8]

Here, however, there is evidence of complaint. Plaintiffs allege that "[b]eginning in 2019 and continuing through early 2023, Beers made numerous complaints to Defendant's management representatives regarding the violations of law at issue in this lawsuit." (Am. Compl. ¶ 55.) "To date, Defendant has refused to acknowledge its unlawful pay practices or to cease engaging in its unlawful activities." (*Id.*) In their Response, Plaintiffs argue that Beers "complained as early as 2019 about how he was paid and was never provided a clear answer." (Docket Entry 40 at 9.) Plaintiffs support this contention with Beers' Second Declaration, in which he avers to having "emailed Cheryl Ray, then Assistant HR Director of Alamance County (now Director of Human Resources), complaining about how Detention Officers … were paid" and receiving a response from Ray that she "will look at [Beers'] record more specifically and then will follow-up." (Second Beers Decl. ¶¶ 5-6.; Plaintiffs' attachment of "a true and accurate copy of the email chain between [Beers] and Cheryl Ray from December 24, 2019[,] through December 30, 2019" (Docket Entry 41-6).) Beers also avers to having

---

[8] *See also, e.g.*, *Blotzer v. L-3 Commc'ns Corp.*, No. CV-11-274-TUC-JGZ, 2012 WL 6086931, at *12 (D. Ariz. Dec. 6, 2012) ("The parties' lack of "mutual understanding" regarding Plaintiffs' salary is further supported by the fact that Plaintiffs, upon realizing that they were being required to work far more than 50 hours per week, complained about their hours …."); *Novick v. Shipcom Wireless, Inc.*, No. 16CV0730, 2016 WL 9308201, at *6 (S.D. Tex. Nov. 22, 2016) (plaintiffs created genuine issue of material fact regarding existence of "clear mutual understanding" by claiming employee complained to superiors about not being paid overtime wages); *Black v. SettlePou, P.C.*, 732 F. 3d 492, 501 (5th Cir. 2013) ("By immediately and repeatedly [complaining about] her lack of overtime pay after being reclassified as exempt," Plaintiff "did much … to show" that § 778.114's agreement requirement was not satisfied.).

17

complained in-person directly to Defendant about the pay method, and to receiving a verbal reply that Defendant "will get it taken care of." (*Id.*)[9]

Although Plaintiffs are long-time employees whose continued work under the FWW method weighs in favor of finding that a "clear, mutual understanding" existed, a fact finder could determine that fact to be outweighed by the evidence in the record that Beers complained about Defendant's payment method. Plaintiffs' contentions that the FWW method is inappropriate were not only after-the-fact—one was raised almost immediately via email to an assistant HR director by Beers upon his discovery of Defendant's payment method, another was raised years later via a face-to-face discussion with Defendant himself. While these complaints alone are sufficient to preclude Defendant's motion for summary judgment, further discussion of the complicated compensation structure at issue here is merited because of the context it provides. *See, e.g., Regan*, 131 F. Supp. 3d at 550-53 (discussing pay plan at issue in detail).

Here, "Detention Officers are paid a 'fixed salary' " monthly for working a variable 14-day Rotating Schedule. (Moricle Aff. ¶ 4; Docket Entry 34 at 4.) They are classified as non-exempt and compensated based on the FWW method. (Moricle Aff. ¶ 3.) Their Check Details and Paystubs may list "173.33" as hours paid, but that number is neither a reflection of hours actually worked nor of hours they are expected to work. (*Id.* ¶¶ 4, 6; *see also* Docket Entries 15-

---

[9] Beers, in his second Declaration (Docket Entry 41 ¶ 6), avers that the following exchange took place:

On February 13, 2023, [Defendant] held an Honor Guard meeting. During the meeting, [Defendant] mentioned how he was attempting to increase the budget to pay Detention Officers and Corporals. I stated, "With all due respect sir, more money is good, but we would prefer to be paid for the hours we work." Sheriff Johnson responded stating, "What do you mean?" I replied, "Some months we work 190-200 hours, but we are only paid for 173.3 hours." Sheriff Johnson claimed that "he had no idea that [Detention Officers] were not being paid correctly, but I will get it taken care of." Sheriff Johnson repeated his statement at least three times. To date, Defendant's pay practices have not changed.

3, 15-6, 15-9, 15-11, 15-17.) "[P]ay periods" run from the first of the month to the end of the month, "payroll date[s]" generally fall on the 25th of each month, but "reporting periods" are biweekly. (Moricle Aff. ¶¶ 5-6.) Neither party has explicitly specified what the *work* period at issue here is. *Cf.* 29 C.F.R. § 553.224 ("As used in [S]ection 7(k), the term 'work period' refers to any established and regularly recurring period of work which, under the terms of the Act and legislative history, cannot be less than 7 consecutive days nor more than 28 consecutive days.").

Though Detention Officers do earn a fixed salary, the amount on their paychecks can vary. They can earn additional pay by working "detention overtime" shifts outside their required shifts, which are tracked on a different monthly pay cycle from their fixed salaries. (*See* Moricle Aff. ¶¶ 8-10.) Thus, a fact finder could infer that "detention overtime" is "a misnomer." *See Monahan*, 95 F. 3d at 1276. Likewise, on this evidence, a fact finder could infer that the only true overtime compensation here occurs when Detention Officers earn Comp Time for hours worked in excess of 86 in a reporting period as part of their normally assigned shift work. (Moricle Aff. ¶¶ 12-13.)[10]

Further, some Detention Officers receive a $4,000 "Shift Differential Bonus," paid at a rate of $333.33 monthly, on the same pay cycle as their fixed salary. (*Id.* ¶ 14.) However, just as "detention overtime" may not seem like true overtime, the "Shift Differential Bonus" here may appear to be neither a bonus nor a shift differential. *See, e.g. Herman v. City of St. Petersburg, Fla., Police Dep't*, 131 F. Supp. 2d 1329, 1331-32 (M.D. Fla. 2001) (A "[s]hift

_____

[10] Defendant's evidence as to this policy is inconsistent. Detention Officers are either given, in lieu of overtime payment, "a Fifty Percent Comp Time Premium in Addition to Their Fixed Weekly Salary for All Hours Worked in Excess of 86 in a Biweekly Pay Cycle" (Docket Entry 34 at 16), "premium 'compensatory leave' (calculated at a one and one half time rate and denoted in payroll records as 'Comp Time Earned Hourly')" for all hours worked over 86 in any reporting period as part of their normally assigned shift work (Docket Entry 34 at 6, 15; Docket Entry 34-3 at 10, 18, 25; Docket Entry 34-2 at 15; *see also id.* at 7) or compensatory leave for all hours worked in a week in excess of 40 (Docket Entry 34-2 at 35).

differential is compensation at a higher wage or rate because of undesirable hours, or disagreeable work.") (citing *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 468-69 (1948)); 29 C.F.R. § 778.502(a) ("The term 'bonus' is properly applied to a sum which is paid as an addition to total wages usually because of extra effort of one kind or another, or as a reward for loyal service or as a gift." The term "bonus" is "improperly applied if it is used to designate a portion of regular wages which the employee is entitled to receive under his regular wage contract.").

Rather, the "Shift Differential Bonus" here may seem to a fact finder to be, in effect, a mere raise. Indeed, its purpose is "to offer Detention Officers and Corporals an increase in pay each month" (Docket Entry 34 at 7; *see also* Am. Compl. ¶ 35) that is regular, nondiscretionary, and not tied to an employee's having worked any specific shift(s). Although the Shift Differential Bonus undoubtedly results in a pay increase for those who receive it, Plaintiffs have alleged that Defendant violates the FLSA by excluding it when calculating their regular rates of pay for accrued Comp Time (Am. Compl. ¶¶ 47-49) and argue this miscalculation results in them being underpaid (*see* Docket Entry 40 at 15-17).

In addition, employees "earn benefits in the form of holiday, vacation, [ ] sick leave, [and] "Birthday" pay[,]" which they are required to utilize to cover absences from shifts they are scheduled to work. (Moricle Aff. ¶ 15.) However, the evidence in the record is unclear regarding Defendant's policy as to whether Detention Officers are permitted to utilize paid leave to cover in excess of 173.33 hours per month, such that the total hours actually worked plus paid leave hours utilized would entitle employees to earn overtime compensation.[11]

---

[11] The FLSA does not require any such overtime compensation. 29 C.F.R. § 778.102 ("[i]f no more than the maximum number of hours prescribed in the Act are actually worked in the workweek, overtime compensation pursuant to section 7(a) need not be paid"). Courts have held that

20

Again, Plaintiffs allege that they have experienced inadequate compensation when they have attempted to do so. (*See* Am. Compl. ¶¶ 45, 46, 76.)

In sum, the compensation structure at issue here is complex. The resources available to employees that could help explain said system appear inadequate. The Job Posting, Employee Handbooks, Check Details, and Paystubs are occasionally ambiguous, contradictory or unclear. There is no evidence of Defendant providing memoranda, trainings, or conversations explaining the FWW to employees or that employees were given clear information about the FWW when hired. Nor are there admissions by Plaintiffs that they had a clear understanding that they were being compensated via the FWW, or even that their understanding of how their pay was calculated matched Defendant's calculation method. Crucially, Beers complained about the compensation method almost immediately after being hired and again years later. Thus, viewing the evidence in the light most favorable to Plaintiffs and reading the FLSA broadly in favor of coverage, there exists a genuine issue of material fact regarding the clear mutual understanding required by the fourth *Flood* factor, and Defendant's motion for summary judgment regarding Plaintiffs' FLSA claims should be denied.

### ii. The Court need not reach Plaintiffs' remaining FLSA arguments.

Plaintiffs argue that "the [FWW] [m]ethod of [c]alculating [o]vertime [c]ompensation [c]annot [d]emonstrate [c]ompliance with [Section 7(k)]." (Docket Entry 40 at 9; *see also id.* at 10 n.4.) Again, Section 7(k) is a statute that, in pertinent part, sets a ratio of hours to days in a work

---

"compensated non-work hours do not count towards the overtime threshold." *Chavez v. City of Albuquerque*, 630 F. 3d 1300, 1310 (10th Cir. 2011); *see also, e.g., Atlanta Pro. Firefighters Union, Loc. 134 v. City of Atlanta*, 920 F. 2d 800, 806 (11th Cir. 1991) ("the FLSA does not require an employer to count hours not actually worked or relief days in determining whether the [overtime] threshold requirement has been met"); *Boll v. Federal Reserve Bank of St. Louis*, 365 F. Supp. 637, 646-47 (E.D. Mo. 1973) (the FLSA does not require employers to compensate employees for holiday time).

period, beyond which law enforcement personnel must receive overtime compensation. 29 U.S.C. § 216 grants jurisdiction and sets parameters for liability, including damages, for employers who fail to adequately compensate employees in violation of Section 7(k). Section 778.114 is an interpretive bulletin that provides guidance about how employers may use the FWW method to calculate overtime pay under Section 7(k). *Flood* also confirmed that "[§] 778.114 does not represent an 'exception' to [the] FLSA. It merely provides an alternative means by which an employer can determine its employees' regular and overtime rate of pay." *Griffin*, 142 F. 3d at 715 (citation omitted). 29 C.F.R. §§ 553.20–28 and §§ 553.200–33 are regulations that clarify the relationship between Section 7(k) and § 778.114; the case law discussed above serves the same purpose.

Again, in one such case, the Court affirmatively held that "employers are permitted to use the FWW method to comply with the FLSA's overtime requirement." *Regan*, 131 F. Supp. 3d at 546 (citing 29 C.F.R. § 778.114.).[12] Conversely, an employer who fails to satisfy the requirements of the FWW method—including the clear mutual understanding requirement—cannot claim that its application of the FWW proves compliance with the FLSA. *See, e.g.*, 29 C.F.R. § 778.114(c); *see also Burgess*, 805 F. Supp. at 348; *Troutt v. Stavola Bros.*, 905 F. Supp. 295, 301 (M.D.N.C. 1995), *aff'd*, 107 F. 3d 1104 (4th Cir. 1997). Evidence of such failure to comply by an employer sued for alleged FLSA violations precludes summary judgment in the employer's favor. *See Turner v. BFI Waste Servs., LLC*, 268 F. Supp. 3d 831, 835 (D.S.C. 2017).

---

[12] *See also, e.g.*, *O'Brien*, 350 F. 3d at 287; *Ouellette v. Fresh Mkt., Inc.*, No. 3:13CV1027(AWT), 2015 WL 13505210, at *3 (D. Conn. Mar. 25, 2015) (unpublished); *Wills*, 981 F. Supp. 2d at 254; *Thomas v. Bed Bath & Beyond, Inc.*, 309 F. Supp. 3d 121, 129 (S.D.N.Y. 2018), *aff'd*, 961 F. 3d 598 (2d Cir. 2020); *Urnikis-Negro v. Am. Fam. Prop. Servs.*, 616 F. 3d 665, 677 (7th Cir. 2010).

Here, the purpose of Plaintiffs' compliance argument is to oppose Defendant's motion for summary judgment. Importantly, said motion depends in part on Defendant's argument that he "has properly compensated Plaintiffs and Collective members under [Section 7(k)] *by virtue of the [FWW] pay plan*, and has fully complied with the requirements of the FLSA." (Docket Entry 34 at 9 (emphasis added).) However, as discussed above, the record does not support a determination that there existed a clear mutual understanding as required by § 778.114. This creates a genuine issue of material fact regarding Defendant's compliance with the FWW. Thus, the undersigned finds that, to the extent Defendant argues that he has complied with the requirements of the FLSA "by virtue" of his compliance with the FWW, his argument is undermined by the Court's determination above on this issue.

However, even absent such a finding, because the Court has already recommended that Defendant's motion for summary judgment be denied, no further discussion of Plaintiffs' compliance argument is necessary.[13] *See, e.g.*, *Murray v. D.R. Horton, Inc.*, No. 4:15-CV-00191-RBH, 2015 WL 9581758, at *5 (D.S.C. Dec. 30, 2015) (unpublished) ("Because the Court is denying Defendant's motion for summary judgment, it declines to address Plaintiff's remaining arguments in opposition."); *see also Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 280 F. Supp. 3d 788, 793 (M.D.N.C. 2017) ("Because the court grants CEC's motion for summary judgment on other grounds, this argument need not be reached.").

_____

[13] Plaintiffs' remaining arguments need not be reached for the same reason. These include the arguments that Defendant cannot satisfy the second *Flood* requirement, that Defendant's separate payment of Detention OT negates the fourth *Flood* requirement, that the Motion for Summary Judgment fails to address Plaintiffs' FLSA claim that Defendant "fail[s] to count all hours worked toward the Section 7(k) overtime threshold," and that Defendant's alleged failure to include all remuneration when calculating Plaintiffs' regular rate violates the FLSA. (Docket Entry 40 at 6-8; 12-17.)

Lastly, the undersigned notes that although Defendant has not responded to Plaintiffs' allegation that Defendant's violation of the FLSA was willful, the Court declines to reach and decide this issue because it would be premature to do so, since Defendant's liability at this stage is still an open question. *Regan*, 131 F. Supp. 3d at 558 and n.10 (collecting cases). Accordingly, the undersigned turns now to Plaintiffs' state law claims.

### c. There is a genuine issue of material fact as to Plaintiffs' state law claims.

### i. Plaintiffs' FLSA-dependent breach of contract claims are preempted.

A key issue here is whether, under North Carolina law, Defendant adequately compensated Plaintiffs for all hours worked. It is undisputed that "Detention Officers … are expected to work approximately 2,184 hours a year, rather than the 2,080 hours reflected in the 'fixed salary' shown on their paystubs." (*Id.* at 20; Docket Entry 34 at 5; Moricle Aff. ¶ 6.) Relatedly, it is also undisputed that the "173.33" shown as the "hours paid" on Detention Officers' Paystubs, is "not a reflection of hours actually worked." (Docket Entry 40 at 20; Docket Entry 34 at 4; Moricle Aff. ¶ 4.) Plaintiffs argue that "[t]he 173.33 hours covered by the salary correlate directly to an hourly rate of pay for each Plaintiff[,]" which Defendant then applies to calculate Detention OT, Court Screener Time, and "to pay out 'comp time taken hourly' which is paid out at Plaintiffs' hourly rate, but only in pay periods Plaintiffs[ ] work less than 173.33 hours." (Docket Entry 40 at 21-22.) Plaintiffs argue that since their "salary only covers 2,080 scheduled work hours, Defendant has not paid Plaintiffs for approximately 104 scheduled work hours each year (2,184 hours worked – 2,080 hours covered by salary = 104 unpaid hours worked)" in violation of the FLSA. (*See id.* at 22.)

24

A state law breach of contract claim that is merely duplicative of an employee's FLSA claim will be dismissed as preempted. *Alvarez-Soto v. B. Frank Joy, LLC*, 258 F. Supp. 3d 615, 626-27 (D. Md. 2017) (dismissing as preempted breach of contract claim for unpaid regular and overtime wages) (citing *Anderson v. Sara Lee Corp.*, 508 F. 3d 181, 193-94 (4th Cir. 2007) (dismissing as preempted state common law claims that "depend on establishing that [the defendant] violated the FLSA" and "essentially require the same proof as claims asserted under the FLSA itself")).

Here, portions of "Plaintiff[s'] breach of contract claim … do[ ] not seek unpaid overtime wages as sought in [their] FLSA claim. *Peters v. Int'l Bhd. of Elec. Workers, Loc. Union No. 1200*, No. CV DKC 17-0134, 2017 WL 4467491, at *5 (D. Md. Oct. 6, 2017) (unpublished) (citations omitted). Therefore, to the extent said claim seeks unpaid compensation for work below the FLSA overtime threshold and at a rate above federal minimum wage, Plaintiffs seek a state law remedy; thus, said portions of their claim are not preempted by the FLSA and will not be dismissed on that basis. *See id.*; *see also Pitts v. LStar Dev. Grp., Inc.*, No. 5:20-CV-525-FL, 2021 WL 4236871, at *4 (E.D.N.C. Sept. 16, 2021) (unpublished) (collecting cases).

However, in Plaintiffs' argument above regarding the 104-hour discrepancy, they cite to "Section 3(e)(4)(A)(ii) of the FLSA" and "29 C.F.R. § 778.315" and argue that "the FLSA requires an employer to pay an employee for all straight-time compensation before any amount can be treated as overtime compensation." Moreover, in cases where the FWW is at issue, "[a]ny dispute between … parties about the number of hours for which the employees' salary was intended to compensate them is not cognizable under the FLSA, but instead should be pursued under state contract law." *Monahan*, 95 F. 3d at 1279-80. Accordingly, the undersigned finds that Plaintiffs'

state law claim is preempted to the extent that it depends on establishing that Defendant violated the FLSA, and turns now to the viability of the remainder of the dispute under state contract law.

### ii. Plaintiffs may proceed under a unilateral breach of contract theory.

Plaintiffs have alleged that:

> Under North Carolina law, the employment relationship between Defendant and Detention Officers … is one of contract. Detention Officers … have contractual rights to be paid all earned wages for hours worked, as well as full payment for accrued paid [leave]. Detention Officers' … contractual rights to be compensated for their earned wages and accrued benefits are specified in Defendant's policies and procedures. Defendant lists Detention Officers' contractual benefits in the Alamance County Job Posting for the Detention Officer position. … Defendant's failure to pay Detention Officers for all Rotating Schedule hours worked and/or their accrued benefits used to cover absences from their Rotating Schedule work hours constitutes a breach of contract under North Carolina law.

(Am. Compl. ¶¶ 36-37.) Defendant argues that Plaintiffs are at-will employees and that the terms of Plaintiffs' employment are not subject to a contract. (Docket Entry 34 at 16-18.) Defendant argues in the alternative that even if a contract did exist here, Plaintiffs have received all benefits owed to them. (Docket Entry 34 at 16, 18-20.) In their Response, Plaintiffs argue that "Defendant and Plaintiffs are parties to a unilateral contract that requires Defendant to pay all wages promised following the performance of an employee's job duties." (Docket Entry 40 at 19.) Plaintiffs further argue that when they used accrued paid leave "to cover an absence for a scheduled work shift over 173.33 hours, Defendant breached its contract with Plaintiffs to provide these paid accrued and deferred benefits by failing to pay them at their equivalent hourly rates." (*Id.* at 25.)

In his Reply, Defendant argues that "Plaintiffs' Opposition … raises a brand-new argument"—the unilateral contract theory—that departs from the allegations in their Amended Complaint. (*See* Docket Entry 47 at 6.) At the outset, the undersigned notes that Defendant has provided no support for a finding that Plaintiffs' use of the unilateral contract theory is even

a departure from the Amended Complaint, let alone an impermissible one. Plaintiffs did include in their Amended Complaint several allegations, shown above, that Defendant violated their contractual rights and breached an alleged employment contract between the parties. Plaintiffs did not specify whether these allegations referred to unilateral or bilateral contract rights, and Defendant has not cited to any authority supporting their apparent contention that an allegation regarding contract rights is somehow exclusive of unilateral contract rights.[14]

Nevertheless, Defendant characterizes this as an effort "to revise the actual legal theory pled." (*Id.*) However, Defendant does not formally object to any such revision, argue that he was prejudiced by it, nor seek to exclude it. Rather, in his Reply, Defendant engages the unilateral contract theory on its merits, thereby implicitly consenting to any supposed change. *See Dent v. Mark Gregory Roofing Co., Inc.*, No. 5:19-CV-149-FL, 2021 WL 965905, at *3 (E.D.N.C. Mar. 15, 2021) (unpublished) (citing *Interstate Petroleum Corp. v. Morgan*, 249 F. 3d 215, 227 (4th Cir. 2001)). Therefore, to the extent, if any, that the unilateral contract theory argued in Plaintiffs' Response can be said to impermissibly depart from the breach of contract claim originally pleaded, the undersigned treats the Amended Complaint as constructively amended to include Plaintiffs' unilateral contract theory. Fed. R. Civ. P. 15(b)(1); *Lee v. Certainteed Corp.*, 123 F. Supp. 3d 780, 794 (E.D.N.C. 2015) (citing *Whitaker v. T.J. Snow Co.*, 151 F. 3d 661, 663 (7th Cir. 1998)); *accord Veatch v. Standard Oil Co. of California*, 49 F. Supp. 45, 50 (S.D.N.Y. 1940), *aff'd sub nom. Veatch v. Standard Oil Co. of California.*, 134 F. 2d 173 (2d Cir.

---

[14] Defendant seems to imply that when plaintiffs make an allegation about a contract, courts should, by default, assume that they referring to a bilateral contract. However, at least some evidence exists suggesting that such an assumption would be unwarranted here. "In the employment context, the majority of employment agreements are unilateral contracts." *Weaver v. John Lucas Tree Expert Co.*, No. 2:13-CV-01698-PMD, 2013 WL 5587854, at *5 (D.S.C. Oct. 10, 2013) (unpublished) (citations omitted).

Case 1:23-cv-00367-TDS-JLW   Document 49   Filed 01/21/25   Page 27 of 33

1943) (considering unilateral contract theory despite plaintiffs' failure to explicitly allege a unilateral contract cause of action in complaint); *Dapper Dev., L.L.C. v. Cordell*, No. 24CV018718-590, 2024 WL 4285123, at *4 (N.C. Super. Sept. 25, 2024) (unpublished) ("Unlike claims subject to Rule 9, a claim for breach of contract is not subject to heightened pleading standards[.]" (citation omitted)).

### iii. A genuine issue of material fact exists as to whether Defendant's policies were a promise to grant benefits that Plaintiffs accepted by working.

In North Carolina, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Bethel v. Fed. Express Corp.*, No. 1:09CV613, 2010 WL 3242651, at *5 (M.D.N.C. Aug. 16, 2010) (unpublished) (citing *Poor v. Hill*, 138 N.C. App. 19, 27, 530 S.E.2d 838, 843 (2000); *Ahmadi v. Triangle Rent A Car, Inc.*, 691 S.E.2d 101, 103 (N.C. App. 2010)). "Under North Carolina law, employment is at-will." *Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 585 (M.D.N.C. 2003) (citing *Kurtzman v. Applied Analytical Indus., Inc.*, 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997)). Indeed, the Supreme Court of North Carolina "has repeatedly held that in the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party." *Kurtzman*, 347 N.C. at 331, 493 S.E.2d at 422 (cited with approval in *Norman*, 286 F. Supp. 2d at 585).

Here, Plaintiffs have offered no such evidence of a bilateral contract establishing any promise to be paid by the hour for a specific amount of hours worked as opposed to being paid a salary. Although Plaintiffs reference the benefits listed in the Job Posting as "contractual," a job posting is merely an invitation to offer, it is neither an offer nor a contract. *Walden v. Gen.*

28

*Elec. Int'l, Inc*, 119 F. 4th 1049, 1058 (6th Cir. 2024). A valid bilateral contract "requires an offer and acceptance in the exact terms and that the acceptance must be communicated to the offeror." *Raynor v. G4S Secure Sols. (USA) Inc.*, 327 F. Supp. 3d 925, 939 (W.D.N.C. 2018), *aff'd*, 805 F. App'x 170 (4th Cir. 2020) (citing *Normile v. Miller*, 313 N.C. 98, 326 S.E.2d 11, 15 (1985)); *see also Rucker v. Sanders*, 182 N.C. 607, 109 S.E. 857, 858 (1921) ("An unaccepted offer is not a contract[.]")).

Similarly, to the extent that Plaintiffs allege that Defendant's policies and procedures "specif[y]" Plaintiffs' "contractual rights to be compensated for their earned wages and accrued benefits" (Am. Compl. ¶ 36) pursuant to a bilateral contract, such allegation is unsubstantiated. Defendant has submitted into evidence the Sheriff's Office Policy & Procedure Manual (Docket Entry 34-15) and Employee Handbooks for 2019 and 2023 (Docket Entries 34-2 and 34-3). Plaintiffs provide no citation in their filings to any contract incorporating said policies and procedures.

Because no separate employment contract has been identified, any argument that the handbooks themselves create a bilateral contract is without merit. *Brewer v. Jefferson-Pilot Standard Life Ins. Co.*, 333 F. Supp. 2d 433, 439 (M.D.N.C. 2004) ("Under North Carolina law, an employee handbook or policy manual does not create a legally binding contract between employer and employee unless the terms of the handbook are expressly incorporated into a separate employment contract.") (citing *Walker v. Westinghouse Electric Corp.*, 77 N.C. App. 253, 259, 335 S.E.2d 79, 83-84 (1985); *Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 585 (M.D.N.C. 2003)). Moreover, the handbooks repeatedly state that employment is at-will (Docket Entry 34-2 at 6, 8; Docket Entry 34-3 at 5; *see also* Docket Entry 34-12 at 3; Docket Entry 34-13 at 3) and that Defendant's "policy is not intended to create a contract, nor is it to

29

be construed to constitute contractual obligations of any kind[.]" (Docket Entry 34 at 2-3; Docket Entry 34-3 at 5; Docket Entry 34-15 at 29.)

Nevertheless, such attempted disclaimers by an employer and the fact that an employee is at-will does not foreclose an employee's ability to seek recovery of unpaid benefits, as Plaintiffs do here. (Am. Compl. ¶¶ 2, 80; *see also id.* at 22; Docket Entry 40 at 18, 25.) "North Carolina courts have 'distinguished between issues of benefits or compensation earned during employment and the issue of an employee['s] entitlement to continued employment." *Bethel*, 2010 WL 3242651 at *7 and n.23; *Jenkins v. AKZO Noble Coatings, Inc.*, 35 F. App'x 79, 84-85 (4th Cir. 2002) (citing *Rucker v. First Union Nat'l Bank*, 98 N.C. App. 100, 389 S.E.2d 622, 625 (1990)). "Claims for accrued benefits, as distinct from claims for prospective continued employment or working conditions, are not affected by the employment at will doctrine." *Jenkins*, 35 F. App'x at 84-85. North Carolina law recognizes benefits promised by employers to at-will employees as unilateral contracts:

> [T]he relationship between an employer and an at-will employee is still contractual in nature. In terms of benefits earned during employment, our Court has consistently applied a unilateral contract theory to the at-will employment relationship …. A unilateral contract is one where the offeror is the master of the offer and can withdraw it at any time before it is accepted by performance.

*Smith v. Town of Cramerton*, No. 3:18-CV-631-RJC-DCK, 2019 WL 4233614, at *5 (W.D.N.C. Sept. 5, 2019) (unpublished) (citing *Wray v. City of Greensboro*, 247 N.C. App. 890, 894, 787 S.E.2d 433, 437 (2016)); *see also White v. Hugh Chatham Memorial Hosp., Inc.*, 97 N.C. App. 130, 131-32, (1990) ("A unilateral contract … has also been defined as a promise by one or an offer by him to do a certain thing in the event the other party performs a certain act ….."). Generally, benefits are assumed to be given as "not a gift or gratuity, but a sum paid for services, or upon a consideration

30

in addition to or in excess of that which would originally be given." *Roberts v. Mays Mills, Inc.*, 184 N.C. 406, 410 (1922) (quoting *Kennicott v. Board of Sup'rs of Wayne County*, 83 U.S. 452 (1872)).

"North Carolina law 'protects employees' expectations about what they are to receive in return for a day's work.' " *Cheek v. City of Greensboro, NC*, 152 F. Supp. 3d 473, 476-77 (M.D.N.C. 2015), *aff'd sub nom. Davis v. City of Greensboro*, 667 F. App'x 411 (4th Cir. 2016) (citing Diane M. Juffras, *Employee Benefits Law for North Carolina Local Government Employers* 14 (2009)). If an employer distributes materials that promise certain benefits, "the promises are enforceable, and the employer must provide the benefits promised until it clearly informs employees of a change in the benefits offered." *See id.*; *see also White*, 97 N.C. App. at 131-32, 387 S.E.2d at 81; *Roberts*, 184 N.C. 406, 114 S.E. at 533-34.

In the employment benefits context, an employee accepts an employer's unilateral offer to provide benefits by entering or continuing employment. *See, e.g., Leone v. Tyco Elecs. Corp.*, 407 Fed. Appx. 749, 751 (4th Cir. 2011); *Hamilton v. Memorex Telex Corp.*, 118 N.C. App. 1, 10-11, 454 S.E.2d 278, 283 (1995); *Roberts*, 184 N.C. 406, 114 S.E. at 533-34. North Carolina courts have applied the "unilateral contract theory with respect to various types of employment benefits." *Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696, 719 (E.D.N.C. 2009); *First Union*, 98 N.C. App. at 103, 389 S.E.2d at 625; *see also Hamilton*, 118 N.C. App. at 10-11 (vacation benefits); *White*, 97 N.C. App. at 131-32, 387 S.E.2d at 81 (disability benefits); *Brooks v. Carolina Tel. & Tel. Co.*, 56 N.C. App. 801, 804-05, 290 S.E.2d 370, 372 (1982) (severance payments); *Roberts*, 184 N.C. 406, 114 S.E. at 533-34 (bonus payments). "[W]hen an employer represents to an employee that he will receive a benefit after working a certain period of time, the employee may accept by entering or maintaining employment, and the employer cannot thereafter

31

disavow the promise once the employee has started to work in reliance thereon." *Hamilton*, 118 N.C. App. at 11; *see also* N.C.G.S. § 95-25.12 (requiring employers who provide vacation to employees to give all vacation time off in accordance with company policy).

Plaintiffs have alleged that Defendant has willfully refused to pay them "all their earned and accrued benefits," including vacation pay, holiday pay, sick pay, and birthday pay. (Am. Compl ¶ 2.) Plaintiffs allege that "[d]uring months Detention Officers … utilize [said benefits] to cover absences for Rotating Schedule work hours exceeding 173.33 per month, Defendant fails to pay Detention Officers … all earned and accrued benefits." (*Id.* ¶ 32; *see also id.* ¶ 37.)

Here, the 2023 Employee Handbook contains Defendant's most current policies in the record as to the accrued benefits at issue, including holiday pay (Docket Entry 34-2 at 32), vacation leave (*id.* at 32-34), sick leave (*id.* at 34), and a variety of other types of leave (*id.* at 35-43). The 2019 Handbook contains similar policies. (*See* Docket Entry 34-3 at 18-27.) The handbooks contain representations that certain employees will receive certain benefits in exchange for working under certain circumstances. (*See, e.g.*, Docket Entry 34-2 at 33 ("Full-time County employees shall earn vacation leave as follows…"); *id.* at 34 ("Alamance County provides eligible full-time employees with paid sick leave to be used for absences…"); *id.* at 35 ("Compensatory leave is accrued by working greater than 40 hours within a work week and is earned in lieu of over-time payment. Earned compensatory leave may be used in lieu of or in addition to vacation, sick or other leave when approved by the department head.").)

The undersigned finds that Defendant's inclusion of said policies in the Employee Handbooks could lead to an inference that the inclusion "constituted a unilateral promise to grant [Defendant's] employee[s paid leave as detailed in the handbooks]" and that

32

"[P]laintiffs accepted [D]efendant's offer by working in [2019] and continuing to work through [2023], and [that] they could not thereafter be divested of the promised [paid leave benefits]." *See Hamilton*, 118 N.C. App. at 11, 454 S.E.2d at 283. Because Plaintiffs have alleged facts and submitted evidence in support of their allegation of being so divested of said benefits (*see, e.g.*, Am. Compl. ¶¶ 33, 34, 37; Docket Entries 15-7, 15-8, 15-9; Docket Entry 40 at 24; Second Beers Decl. ¶ 6; Docket Entry 41-4; Stanton Decl. ¶ 5; Docket Entries 42-1, 42-2), which, viewed in the light most favorable to Plaintiffs, could lead a fact finder to return a verdict for them, Defendant's motion for summary judgment as to Plaintiffs' state law claims regarding the benefits they allegedly accrued should be denied.

## IV.  **CONCLUSION**

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Defendant's Motion for Summary Judgment (Docket Entry 33) be **DENIED**.

/s/  Joe L. Webster
United States Magistrate Judge

January 21, 2025
Durham, North Carolina